IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

**FILED**

**November 16, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0081

In Re K. L.

Appeal from the Circuit Court of Ohio County
The Honorable Jason A. Cuomo, Judge
Case No. 20-CJA-91 JAC

VACATED AND REMANDED

Submitted:  November 1, 2022
Filed:  November 16, 2022

John M. Jurco, Esq.
St. Clairsville, Ohio
Attorney for Petitioner-Father K. L.


David A. Mascio, Esq.
Weirton, West Virginia
Guardian ad Litem for Infant K. L.

Patrick Morrisey, Esq.
Attorney General
Andrea Nease Proper, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for West Virginia
Department of Health and Human
Resources

JUSTICE WOOTON delivered the Opinion of the Court.
JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.      "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

WOOTON, Justice:

This is an appeal from the Circuit Court of Ohio County's January 4, 2022, order terminating petitioner-father K. L.'s (hereinafter "petitioner") parental rights to infant K. L.[1] Upon the filing of an abuse and neglect petition alleging medical neglect, educational neglect, and substance abuse, petitioner stipulated to medical and educational neglect and was adjudicated neglectful on that sole basis. During the underlying proceedings, petitioner either tested negative for illegal substances or refused to drug screen, denying any substance abuse disorder. He maintained this denial throughout the proceedings despite having admitted to prior occasional use, being arrested in possession of methamphetamine, and being twice found in possession of synthetic urine subsequent to adjudication—once during a drug screening.

At disposition, after finding that the Department of Health and Human Resources (hereinafter "DHHR") had not established that petitioner had a substance abuse disorder, the circuit court ordered a post-dispositional improvement period. Petitioner continued to refuse to drug screen, purportedly on the basis that no court order yet required him to do so. The circuit court terminated petitioner's parental rights, citing his failure to

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). All references to "K. L." refer to the subject infant, as petitioner-father is referred to as "petitioner" herein.

1

participate in the post-dispositional improvement period and finding that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. Petitioner appeals, citing a litany of errors but arguing primarily that the circuit court erred by terminating his parental rights on a basis—presumed substance abuse—upon which he was not adjudicated.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court's termination of petitioner's parental rights is erroneously based upon a condition of abuse and neglect upon which petitioner was never adjudicated. We further find that the circuit court's purported reliance on petitioner's violation of his post-dispositional improvement period likewise fails to support termination because the implementation of the improvement period did not comport with West Virginia Code § 49-4-610(3) (2015). We therefore vacate that portion of the dispositional order terminating petitioner's parental rights and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In August 2020, DHHR received a referral regarding K. L. which alleged that petitioner and K. L.'s mother, D. L., were using and selling drugs, as well as failing to send K. L. to school. An in-home safety plan was initiated requiring drug screening and adult life skills and parenting classes. Petitioner and D. L. failed to comply with the safety plan

2

and DHHR received yet another referral regarding continued drug use; the second referral also alleged that petitioner accidentally shot himself in the home. DHHR further discovered that K. L. suffers from Russell-Silver Syndrome, a genetic growth disorder, and had not been regularly attending doctor's appointments.

On October 14, 2020, a petition was filed against both parents alleging medical and educational neglect, as well as substance abuse. The petition alleged that D. L. tested positive for methamphetamines and that both parents admitted to methamphetamine use but characterized themselves as merely "weekend users." Petitioner waived his preliminary hearing and multi-disciplinary team ("MDT") meetings ensued. During these meetings, petitioner denied having a substance abuse issue and admitted only to prior, infrequent use on weekends when playing in a band. Prior to adjudication, it appears that petitioner and D. L. drug screened four to five times a week and were negative, with one exception where D. L.'s screening returned a false positive.

At adjudication on January 20, 2021, the parents stipulated to medical and educational neglect, i.e. failure to schedule regular pediatrician and specialist visits and failure to enroll K. L. in school or take proper steps to undertake home schooling; D. L. also admitted to a single positive drug screen. DHHR "reserved the right to produce evidence at a future hearing of any matter not admitted," per the adjudicatory order and, during the adjudicatory hearing, discussed its desire that petitioner and D. L. continue to drug screen due to "concerns" about their "past history[.]" The circuit court directed the

3

parties to have an MDT meeting and reach agreed terms for continued drug screening and other services.

On February 24, 2021, petitioner was arrested and charged with possession of methamphetamine; he pled guilty to a misdemeanor charge of simple possession. Shortly thereafter, Child Protective Services ("CPS") was advised by K. L.'s kinship placement that petitioner and D. L. were utilizing "Quick Fix," a synthetic urine product, to pass their drug screens. On March 9, 2021, petitioner was again stopped by police and discovered with synthetic urine in his possession. On March 15, 2021, petitioner was found with synthetic urine during a search at the drug screening facility. Petitioner screened only once from that point, alleging that he was embarrassed by having to pull his pants fully down to screen. The screening facility apparently offered DNA swab testing as a complement to the urine screening, which would alleviate this concern; however, petitioner continued to refuse to screen.[2]

On March 25, 2021, petitioner filed a written motion for an improvement period; however, the motion was later orally withdrawn at the hearing on the motion with little to no explanation. In discussing the potential disposition of the case, the circuit court noted that petitioner was adjudicated for "[s]omething other than drug usage," and the prosecutor responded that "we've reserved to [sic] right to produce evidence, and *we've*

---

[2] The DNA swab would apparently allow petitioner to send in his urine sample, which could then be matched to the DNA swab to ensure the sample belonged to petitioner.

*gained evidence since [adjudication] about involvement with drug activity and such.*"

(Emphasis added). The court then inquired further:

> THE COURT: Do you feel you have enough in the petition regarding drug usage to dispose of the case based upon drug usage as causing the abusive and neglectful situation? Because I didn't get the sense that the petition was couched in that language, and *I was concerned that at disposition I would not be able to consider drug usage substantively because of that.*
>
> MS. GEYER: Well, there's substance abuse issues that impair their judgement [sic] and ability to parent their children. That is actually stated in the petition.

(Emphasis added).

Dispositional hearings were held on October 1 and October 8, 2021; neither petitioner nor D. L. testified. Multiple witnesses were called, testifying to 1) petitioner's arrest and plea to methamphetamine possession; 2) petitioner's traffic stop where synthetic urine was discovered; 3) the drug screen where petitioner was discovered with synthetic urine; 4) petitioner's drug treatment assessment wherein he denied a substance abuse disorder; 5) petitioner's unauthorized contact with K. L. and a confrontation involving the kinship placement resulting in a protective order being entered; 6) petitioner's admission to the kinship placement that he had a "supplier"; and 7) petitioner's refusal to drug screen.

However, the visitation supervisor testified that petitioner conducted himself properly during visits with K. L., interacted appropriately with him, and appeared to have a good relationship and substantial bond with him. She testified that on occasional visits

5

she had concerns about petitioner's glassy eyes and avoidance of eye contact but could not establish intoxication. The CPS worker testified that K. L. was very intelligent and mature for his age and that any educational and/or medical neglect had been rectified since K. L. had been in DHHR custody.[3] She further testified to DHHR's early intention in the case to reunify K. L. with his parents, as K. L. loved and desired to be reunified with them. She indicated that termination was recommended only because there was a "drug issue" that had not been "acknowledged" or addressed. The kinship placement confirmed that petitioner and K. L. had a strong bond, that K. L. missed his parents, and was happy when with them.

During the first of the two dispositional hearings, the circuit court expressed interest in hearing from K. L., given the testimony regarding his maturity and intelligence. However, when the second dispositional hearing resumed the court heard testimony from K. L.'s therapist, who indicated that K. L. was extremely protective of his parents and

---

[3] As to the medical neglect, it seems apparent that K. L. did not suffer from any acute, untreated medical conditions, but rather was not following up regularly with pediatricians and/or specialists to monitor his genetic condition. As to the educational neglect, K. L. was enrolled in school after removal, but both parents insisted he was being informally homeschooled through workbooks, were unaware it was necessary to coordinate homeschooling through the board of education, and that K. L. was simply not at grade level.

harbored much guilt about his removal and his success in foster care. The court never interviewed K. L. thereafter.[4]

While discussing dispositional options, the circuit court indicated that it did not believe sufficient evidence had been produced to support termination. The court further found that DHHR had not proven that petitioner had a drug problem based on the evidence introduced: "I'm still not convinced that you've proven they have a drug problem that interferes with their ability to parent." In response to the prosecutor's concerns regarding petitioner's refusal to acknowledge a drug issue and request an improvement period in that regard, the court again reiterated that petitioner had not been adjudicated for substance abuse.[5]

With the agreement of the parties, the circuit court then determined that a post-dispositional improvement period pursuant to West Virginia Code § 49-4-604(e)

---

[4] The record indicates that, although an order was issued for K. L.'s attendance at the second dispositional hearing, his case worker was found deceased in her home that day and K. L. did not attend as a result.

[5] The court further remarked "I was waiting for evidence of what's in the petition, and I haven't gotten a whole lot." When the prosecutor stated "[t]hey were already adjudicated," the court remarked, "Not for drug use." In further response to the prosecutor's insistence that petitioner had failed to admit to a substance abuse problem, the court stated, "But you don't have evidence that he was using drugs." When the prosecutor countered that he was arrested for possession of methamphetamine, the court replied, "That's not using." In response to the prosecutor's representation that petitioner admitted to personal use during an MDT meeting, the court noted that no one had testified to any outright admission by petitioner of personal use.

(2020)[6] would be the most appropriate disposition given that the educational and medical neglect had been rectified. The court expressed concern that only through returning K. L. to the home could there be a meaningful assessment of whether petitioner and D. L. had made improvement in the areas in which they had been adjudicated. However, the court agreed that continued allegations of drug use made it imperative that efforts be made to ensure that K. L. could be safely returned to the home. In that regard, the prosecutor indicated that petitioner and D. L. "wouldn't agree to some of the things that we wanted them to do," but relented, "if the [c]ourt would *impose* some things for the dispositional agreement [sic] period, I think we can feel safe." (Emphasis added). The court stated that the parties should "figure out what those terms are" but agreed they should "start with the drug screening first and make sure that's not an issue[.]"

The circuit court then inquired more specifically of petitioner's willingness to undergo the DNA swab and drug screening, asking, "[D]o you agree with that, first of all?" Petitioner replied, "Yeah, that's fine. That was never proposed to us at an MDT." The court replied that "if after talking to your attorneys or whatever and you don't oppose that, then let's do that then." The court then directed the parties "to have an MDT and hammer out the terms."[7] The dispositional order entered following the hearing indicated

---

[6] *See* discussion, *infra*.

[7] The prosecutor further stated, "I think that we can get the MDT together soon, we can draft agreed orders. If we can have them sign off on those, like I think you like to have them sign off on those terms[.]"

that "[t]he [c]ourt questioned whether the Respondents were agreeable to DNA testing, and they did so agree[,]" but "an MDT is needed to develop terms." The order itself, however, ordered nothing more than the parties to return for a status hearing.

When the parties reconvened for a status hearing on December 17, 2021, the court was advised that since the last hearing, neither petitioner nor D. L. had drug screened. Petitioner's counsel explained that petitioner did not want to do so until he was ordered by the court. However, the guardian ad litem insisted that "it was clear at the 10/8/21 hearing that [petitioner and D. L.] were to drug test *as of that day* and have not." (Emphasis added). The court agreed. [8]

The circuit court terminated petitioner and D. L.'s parental rights, finding that petitioner "failed to participate in a Post-Disposition[al] Improvement Period by failing to drug screen" and that, as a result, there was no reasonable likelihood the conditions of abuse/neglect could be corrected in the near future. DHHR and the guardian ad litem both supported termination and this appeal followed. [9]

---

[8] The guardian ad litem stated, "But it was, at least in my opinion, it was pretty d*mn clear that they were going to drug test that day and they were to start drug testing." The circuit court replied, "Oh, there's no doubt in my mind."

[9] D. L. did not file an appeal. No part of this opinion is to be read as affecting the court's termination of D. L.'s rights in the January 4, 2022, order.

## II. STANDARD OF REVIEW

As is well-established,

> "[w]hen this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). With these standards in mind, we proceed to the parties' arguments.

## III. DISCUSSION

Petitioner raises seven assignments of error that collectively assert errors at the outset of the proceedings, including K. L.'s emergency removal, and at disposition. As to his first three assignments of error, petitioner complains that DHHR failed to comply with West Virginia Code § 49-4-303 (2015) in its emergency removal of K. L. and other statutory provisions. As to disposition, petitioner claims the circuit court erred by terminating his parental rights 1) based on an issue—substance abuse—which was not the subject of his adjudication; 2) in lieu of a lesser "disposition 5" [10]; and 3) without considering the wishes of K. L. We will address each in turn.

---

[10] West Virginia Code § 49-4-604(c)(5) permits the court to "commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court."

*A.     EMERGENCY REMOVAL*

Petitioner first asserts two specific violations of West Virginia Code § 49-4-303 in removing K. L. from the home: 1) DHHR's failure to obtain a ratification order following the emergency removal of K. L.; and 2) DHHR's failure to file the petition within two judicial days of the removal. Petitioner claims K. L. was removed from the home on an emergency basis on October 8, 2020, without subsequent ratification, and that the petition was not filed until October 14, 2020—two days after the limitation on emergency custody had expired. DHHR appears not to dispute the absence of a ratification order but argues that petitioner waived any defect in the removal. [11] DHHR further argues that because the record does not reflect when K. L. was removed, the alleged failure to file the petition within two judicial days cannot be established.

West Virginia Code § 49-4-303 provides that if a child is removed from the home on an emergency basis,

> the worker shall *forthwith* appear before a circuit judge or referee of the county where custody was taken and *immediately*

---

[11] At oral argument, contrary to repeated references to the "emergency removal of the child" in its brief, counsel for DHHR claimed that there was no emergency removal because the parents agreed to a kinship placement, obviating the necessity of an emergency removal and ratification. However, like the actual date of K. L.'s removal, the appendix record is equally devoid of information supporting DHHR's newfound position about the timing and circumstances surrounding his removal.

We further caution DHHR that, to the extent it failed to comply with the requirements of West Virginia Code § 49-4-303 in its removal of K. L. from the home, our conclusion that this issue is moot and/or was waived in this particular matter should not be read as condoning lack of strict compliance with these requirements, which remain of paramount importance.

11

> apply for an order. . . . This order shall ratify the emergency custody of the child pending the filing of a petition. . . .
>
> . . . .
>
> . . . If the emergency taking is ratified by the judge or referee, emergency custody of the child or children is vested in the department *until the expiration of the next two judicial days, at which time any child taken into emergency custody shall be returned to the custody of his or her parent or guardian or custodian unless a petition has been filed* and custody of the child has been transferred under section six hundred two of this article.

(Emphasis added). DHHR is correct that the appendix record does not reflect the date of K. L.'s emergency removal; however, ordinarily the ratification order itself—which DHHR did not obtain—would provide evidence of that date. We therefore accept for purposes of this issue petitioner's representation that K. L. was removed from the home on an emergency basis on October 8.

However, we find that petitioner's failure to take action to enforce the provisions of West Virginia Code § 49-4-303 and have K. L. returned to the home, as well as the ensuing proceedings, during which petitioner stipulated to allegations of neglect, have rendered errors surrounding K. L.'s emergency removal moot. *See In re B. N.*, No. 16-1098, 2017 WL 2230138, at *2 n.2 (W. Va. May 22, 2017) (memorandum decision) ("Having failed to properly bring the issue [seeking return of removed child] before this Court when it was a 'live' controversy, and in light of the intervening termination of his parental rights, the issue has been rendered moot[.]"). Further, petitioner's "Waiver of Preliminary Hearing" provides that he "acknowledges that [] removal of the child was

necessary pursuant to applicable law and hereby consents to same." That acknowledgment, coupled with the initial and preliminary hearing orders in which the circuit court found that there was "imminent danger" necessitating K. L.'s removal, renders these assignments of error meritless.[12] *See also In re R. Y.*, No. 16-1125, 2017 WL 5037071, at *5 (W. Va. Nov. 2, 2017) (memorandum decision) (finding no error in failure to obtain ratification where court mitigated violation of statutory procedures by subsequently finding removal was necessary to protect child).

---

[12] We likewise dispense with petitioner's contention that the initial orders in the case were statutorily defective. Petitioner claims that certain language required by West Virginia Code §§ 49-4-601(e)(5) (2019) and 602(b) (2015) was absent, specifically 1) notice that the proceedings "can result in the permanent termination of [] parental rights"; and 2) findings regarding whether "continuation in the home" is contrary to the child's best interests and whether "reasonable efforts" were made by DHHR to prevent removal and facilitate return of the child. *See also* W. Va. R. P. Child Abuse & Neglect Proc. 20 ("The notice of hearing shall specify the time and place of the first hearing, the right of parties to counsel, and the fact that the proceeding can result in the permanent termination of parental, custodial or guardianship rights.") and W. Va. R. P. Child Abuse & Neglect Proc. 16(e) (requiring removal order to contain same findings as required in preliminary hearing order under W. Va. Code § 49-4-602(b)(1)-(5)).

As to the notice of potential termination of parental rights, the petition itself asks the court to enter a disposition "which may include an Order whereby the parental and custodial rights and responsibilities of [petitioner] shall be terminated." This is undoubtedly sufficient to provide petitioner notice that his parental rights may be terminated. As to the "continuation in the home" and "reasonable efforts" language, we find that in reading the initial order and preliminary hearing order collectively, this language is substantially present. *See* "Initial Order" (finding that "[t]here are no reasonable alternatives to removing the infant child [and] . . . [t]he danger presented . . . creates an emergency situation making efforts to avoid removing the infant child . . . unreasonable and impossible") and "Preliminary Hearing Order" (finding that DHHR "has made reasonable efforts to preserve the family and prevent removal of the child; however, under the circumstances the DHHR had no choice but to remove custody of the child[.]"). We therefore find no merit to this assignment of error.

13

*B.*     *TERMINATION BASED UPON SUBSTANCE ABUSE*

Petitioner's primary assignment of error asserts that the circuit court erroneously terminated his parental rights on the basis of substance abuse—a matter upon which he was not adjudicated abusive or neglectful. Petitioner's concerns are well-placed, as substance abuse appears to have been the primary issue discussed and in contention throughout the proceedings and particularly at disposition, yet he neither stipulated to substance abuse nor was he adjudicated on that basis.

DHHR counters that substance abuse was alleged in the petition and remained a persistent concern throughout the proceedings; it submits that "evidence of drug use was introduced at the two day dispositional hearing to no objection[.]" DHHR contends that petitioner was therefore properly terminated on this basis because he would neither "acknowledge his substance abuse issue nor seek [] treatment for it[.]"

Petitioner argues that the instant case mirrors the termination this Court reversed in *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013). In *Lilith H.*, the abuse and neglect petition alleged a single instance of violence between the respondent father and his father-in-law; the respondent parents were adjudicated exclusively on the basis of the fight with the father-in-law and their failure to protect the children from being exposed to the fight. *Id*. at 175, 744 S.E.2d at 285. At disposition, however, the testimony "centered exclusively around the allegedly contentious relationship between [*the parents*]," rather than the father-in-law, against whom the parents had sought a domestic violence protective

14

order and eliminated continued contact. *Id.* at 176, 744 S.E.2d at 286 (footnote omitted). The circuit court terminated both parents' rights based on their failure to address their internal domestic violence and the mother's refusal to leave the father as a result of domestic violence. *Id.* at 177-78, 744 S.E.2d at 287-88.

The Court reversed, observing that petitioners' contentious relationship "overwhelmed" the evidence at disposition and "formed the *sole* basis of the court's termination of their parental rights. Yet, at no time did the circuit court [adjudicate them as abusive/neglectful due to domestic violence]." *Id.* at 181, 744 S.E.2d at 291. The Court found it to be "plain error" for the circuit court to "terminate[] the parental rights on the basis of allegations and issues which were never properly made subject of the adjudication." *Id.* at 180, 744 S.E.2d at 290.

The *Lilith H.* Court explained that the failure to adjudicate the parents on matters upon which termination was based allowed "troubling allegations [to] wholly elude[] . . . commensurate attention" during the proceedings—a fundamental prerequisite to the goal of reunification of families. *Id.* at 181, 744 S.E.2d at 291. Recognizing the dynamic nature of issues underlying abuse and neglect proceedings, the *Lilith H.* Court reminded circuit courts of "their authority, if not *obligation*, to compel newly-discovered or *developed* abuse and neglect allegations to be made part of a petition" through

15

amendment of the petition lest those issues remain "unaddressed." *Id*. at 182, 744 S.E.2d at 292 (some emphasis added).[13]

Similarly, in the instant case, petitioner's *alleged* substance abuse was essentially the sole focus of the proceedings below and the core underpinning of the circuit court's termination of his parental rights, yet he was not adjudicated as abusive or neglectful on that basis. The prosecutor conceded that "we've reserved to [sic] right to produce evidence, and *we've gained evidence since [adjudication] about involvement with drug activity* and such"; however, DHHR never amended the petition and/or sought to reopen adjudication to establish substance abuse. (Emphasis added). Further, the court expressly recognized that it would be hamstrung at disposition in its ability to consider

_____

[13] Rule 19(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides:

> *Amendments After the Adjudicatory Hearing.*—If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.

*See also* Syl. Pt. 5, *In re Randy H.*, 220 W.Va. 122, 640 S.E.2d 185 (2006) ("To facilitate the prompt, fair and thorough resolution of abuse and neglect actions, if, in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the Department of Health and Human Resource's petition, then pursuant to Rule 19 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* [1997] the circuit court has the inherent authority to compel the Department to amend its petition to encompass the evidence or allegations.").

substance abuse because petitioner had not been adjudicated on that basis, making clear its belief that DHHR *had not proven* that petitioner suffered from a substance abuse problem by clear and convincing evidence. While certainly substance abuse was alleged in the petition, petitioner quite deliberately declined to stipulate to those allegations and DHHR made no effort to ensure that this alleged condition of abuse and/or neglect was properly adjudicated.

In fact, DHHR's contention that petitioner was properly terminated for failure to "acknowledge" his substance abuse problem merely highlights the deficiency in the proceedings. Had petitioner been adjudicated as having a substance abuse problem which led to the "conditions of neglect or abuse," the circuit court would have been statutorily authorized to find that his refusal to acknowledge the problem was evidence that there was "no reasonable likelihood the conditions of neglect or abuse can be substantially corrected in the near future." *See* W. Va. Code § 49-4-604(c)(6); *In re: Charity H.,* 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004) (quoting *W. Va. Dept. of Health and Human Res. ex rel. Wright v. Doris S.,* 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996)) ("'[I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of *the basic allegation pertaining to the alleged abuse and neglect* or the perpetrator of said abuse and neglect, results in making the problem untreatable[.]'" (Emphasis added)). However, at no time

17

was substance abuse legally determined to constitute a "condition[] of neglect or abuse" requiring acknowledgment or correction as pertained to petitioner.[14]

The Court's insistence upon proper adjudication of the issues underlying abuse and neglect is not a "hollow formality." *In re A. P.-1*, 241 W. Va. 688, 695, 827 S.E.2d 830, 837 (2019). Rather, this Court has made clear that defects in adjudication implicate the due process protections afforded to parents and that proper adjudication is a jurisdictional prerequisite to continuation of the proceedings. *See id.* at 694, 827 S.E.2d at 836 ("'The two-stage [adjudicatory and dispositional] process supports the constitutional protections afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment.'" (quoting *In re K.*

---

[14] Further, as discussed *infra*, prior to termination, the circuit court ordered a post-dispositional improvement period pursuant to West Virginia Code § 49-4-604(e). The language of that statute similarly evidences that the period of improvement must be designed to address the conditions of abuse and neglect upon which adjudication was based:

> The court may, as an alternative disposition, allow the parents or custodians an improvement period not to exceed six months. During this period the court shall require the parent to rectify *the conditions upon which the [abuse and neglect] determination was based*. The court may order the child to be placed with the parents, or any person found to be a fit and proper person, for the temporary care of the child during the period. At the end of the period, the court shall hold a hearing to determine whether *the conditions* have been adequately improved and at the conclusion of the hearing shall make a further dispositional order in accordance with this section.

*Id*. § 49-4-604(e) (emphasis added).

18

*H.*, No. 18-0282, 2018 WL 6016722, at \*5 (W. Va. Nov. 16, 2018)); Syl. Pt. 1, *State v. T. C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code, 49-6-5, it must hold a hearing under W. Va. Code, 49-6-2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case.").

For the same reasons that we have established that disposition may not ensue absent an adjudication of abuse and/or neglect, termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated. The record makes abundantly clear that petitioner's termination presumed a substance abuse disorder which was never proven and therefore was not the subject of his adjudication.

C.    *POST-DISPOSITIONAL IMPROVEMENT PERIOD*

The foregoing notwithstanding, we observe that the circuit court's order terminating petitioner's parental rights is couched in terms of his "failure to participate" in his post-dispositional improvement period—a statutorily-recognized basis upon which this Court regularly affirms termination of parental rights. *See* W. Va. Code § 49-4-604(c)(6) and (d)(1)-(3) (permitting termination of parental rights where "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" including failure to respond to or follow through with recommended treatment or refusal

to cooperate in development of family case plan).[15] As a result, we find it necessary to further examine the post-dispositional improvement period imposed by the circuit court.

Petitioner denies that his failure to drug screen constitutes a refusal to participate in his post-dispositional improvement period because he had not yet been ordered to do so. Petitioner contends that, contrary to the circuit court's directive, no MDT meeting to develop terms for the improvement period was ever held; proposed improvement period terms were only received nine days before the termination hearing; and he never received a family case plan. DHHR fails to dispute these assertions, arguing generally that petitioner verbally agreed to drug screen during the dispositional hearing and thereafter failed to do so in violation of his improvement period. The guardian ad litem puts a finer point on petitioner's alleged failure, asserting that "it is transcribed *and* in the Court Order . . . that both parents would go to the Lee Day Report Center and drug screen *immediately following* the October 8, 2021, [dispositional] hearing." (Emphasis added).

---

[15] West Virginia Code § 49-4-604(d)(3) further provides that "no reasonable likelihood the conditions of abuse/neglect can be corrected" may be found where the parent

> ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, *as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child*[.]

(Emphasis added). As the circuit court found, the conditions alleged in the petition which threatened the health and welfare of K. L. were medical and educational neglect, which had been rectified following K. L.'s removal from the home.

20

To the contrary, however, the requirement to drug screen that day is neither in the transcript nor the dispositional hearing order.[16]

West Virginia Code § 49-4-610(3) governs the post-dispositional improvement periods and provides, in pertinent part:

> (3) Post-dispositional improvement period. -- The court may grant an improvement period not to exceed six months as a disposition pursuant to section six hundred four of this article when:
>
> . . . .
>
> (B) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further *makes a finding, on the record, of the terms of the improvement period;*
>
> . . . .
>
> (E) *The order granting the improvement period shall require the department to prepare and submit to the court an individualized family case plan in accordance with section four hundred eight of this article.*

(Emphasis added). Per subsection (E)'s requirement of submission of a family case plan compliant with West Virginia Code § 49-4-408 (2015), that statute provides, in pertinent part:

---

[16] The guardian ad litem's brief further makes representations about "numerous attempts" to compel petitioner to drug screen and to review the "Post Dispositional Plan of Improvement"; he further represents that petitioner "reviewed the Post Dispositional Plan on the phone with his Counsel . . . on November 1, 2021." However, there is no evidence of these efforts contained anywhere in the appendix record, nor does the plan itself appear in the record.

21

> The department shall convene a multidisciplinary treatment team, which shall develop the case plan. . . . The case plan may be modified from time to time to allow for flexibility in goal development, and *in each case the modifications shall be submitted to the court in writing*. . . . The court *shall examine the proposed case plan or any modification thereof,* and upon a finding by the court that the plan or modified plan can be easily communicated, explained and discussed so as to make the participants accountable and able to understand the reasons for any success or failure under the plan, the court shall inform the participants of the probable action of the court if goals are met or not met.

(Emphasis added).

In ordering the post-dispositional improvement period, the circuit court neither orally nor in its dispositional order identified the terms of the improvement period. Rather, the court directed the parties to "figure out what those terms are" and "to have an MDT and hammer out the terms." The court agreed generally that before K. L. was returned to the home the parties should "start with the drug screening first," and inquired of petitioner's willingness to undergo the DNA swab. However, despite petitioner's expressed willingness, the court encouraged petitioner to discuss it further with his counsel: "*[I]f after talking to your attorneys or whatever and you don't oppose that*, then let's do that then." (Emphasis added). Thereafter, there is no indication in the record that an MDT meeting was conducted, that terms were reached, submitted to the court, or ordered by the court before petitioner's parental rights were terminated.

22

The record further contains no family case plan required under the post-dispositional improvement period as contemplated by West Virginia Code § 49-4-610(3)(E).[17]  Rule 37 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that where an improvement period is ordered as an alternative disposition, "the court shall order the Department to submit a family case plan within thirty (30) days of such order containing the information required by W. Va. Code §§ 49-4-408 and 49-4-604."   However, the dispositional order itself was not entered until *over two months* after the dispositional hearing in violation of Rule 36 of the Rules of Procedure for Child Abuse and Neglect Proceedings ("The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.").   It contained no requirement that a family case plan be submitted as required by West Virginia Code § 49-4-610(3)(E) and the circuit court terminated petitioner's parental rights within eleven days of entry of the order.  As this Court has cautioned,

> [t]he procedural and substantive requirements of West Virginia
> Code § 49-4-601 *et seq.*, the Rules of Procedure for Child
> Abuse and Neglect, and our extensive body of caselaw are not
> mere guidelines. . . . The time limitations and standards
> contained therein are mandatory and may not be casually

---

[17] The only family case plan contained in the appendix record was prepared *prior* to the dispositional hearing where the improvement period was ordered, is unsigned by the parties and their attorneys, is designated an "original" child case plan, and reflects only one MDT meeting on May 17, 2021—months before the dispositional hearing.  The plan is fairly described as pro forma and cursory, with the lone reference to services or treatment stating: "Service/Service Provider:  Drug screens, substance abuse evaluation, substance abuse treatment."  Sections for referral dates, dates of participation, goals, beginning and completion dates, as well as frequency are left blank.  The transcripts of the various hearings reveal no substance abuse treatment plan aside from an evaluation conducted early in the proceedings during which petitioner denied a substance abuse disorder.

23

> disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority.

*In re J. G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018).

Our caselaw further makes clear that failure to comply with amorphous improvement period requirements cannot form the basis of a termination of parental rights, and that the failure to prepare a family case plan containing clear requirements designed to rectify conditions of abuse or neglect is reversible error. *See In re Desarae M.*, 214 W. Va. 657, 665, 591 S.E.2d 215, 223 (2003) (finding lower court committed reversible error in failing to require a family case plan as mandated by statute); *State ex rel. W.Va. Dep't of Hum. Servs. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987), *superceded by statute on other grounds as stated in State ex rel. Virginia M. v. Virgil Eugene S. II,* 197 W. Va. 456, 461 n.9, 475 S.E.2d 548, 553 n.9 (1996) (same); *In re K. B.*, No. 18-0255, 2018 WL 6119921, at *1 (W. Va. Nov. 21, 2018) (memorandum decision) (vacating termination finding that "[a]lthough . . . terms were provided by the circuit court, the DHHR never filed a case plan memorializing the goals for petitioner's improvement").

In *Desarae M.*, the Court explained that even where terms of a family case plan were laid upon the record, the absence of the plan itself was reversible error, explaining, "[w]ithout a family case plan, the individuals seeking to assist a parent are limited in their ability to formulate distinct goals, methods of achieving such goals, or means by which success will be judged." 214 W. Va. at 663, 591 S.E.2d at 221. The Court

24

acknowledged that it was "tempting to circumvent the statutory requirement by focusing upon . . . the absence of clear indication that the [parent] is capable of improvement even given a concise family case plan, or the recalcitrance of the [parent]" but that the statutory requirements must be followed regardless. *Id*. at 664, 591 S.E.2d at 222. The Court reiterated that the family case plan provides "a means of measuring progress and effort[] [and] of dealing promptly with failure to provide or avail oneself of services[.]" *Id*.; *see also Cheryl M*., 177 W. Va. at 693-94, 356 S.E.2d at 186-87 (stating that family case plan "is designed to foreclose a natural parent from being placed in an amorphous improvement period where there are no detailed standards by which the improvement steps can be measured. It also provides a meaningful blueprint that the [DHHR] can monitor and which will also give the court specific information to determine whether the terms of the improvement period were met.").

Particularly germane to the instant case, the *Deserae* Court rejected the "mere recital of goals" as sufficient to replace a family case plan as such ambiguity would only "lead to uncertainty regarding whether the failure to achieve one or more of the goals arises from mere obstinacy, the lack of . . . services to the family, or some other cause or circumstances." *Id*. Therefore, DHHR's insistence that petitioner had a "clear path" to reunification is belied by the complete absence of identifiable and certain terms for his improvement period including the necessity, initiation, and frequency of drug screening. Moreover, despite DHHR's insistence that petitioner failed to "address" his alleged substance abuse issue, at no time was anything more than drug *screening* discussed; drug

25

screening is mere detection, not treatment. DHHR's failure to establish a substance abuse problem through adjudication substantially impaired its ability to require petitioner to actually address this alleged problem through *treatment*.[18] In that regard, the deficiencies in both phases of the proceedings provided petitioner countless opportunities to evade what DHHR now claims to be the root cause of the conditions of abuse and neglect. It is well-established that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

We do not suggest that drug screening may only be required in cases where adjudication is based upon substance abuse. In this case, we find that petitioner's failure to drug screen was an improper basis for termination—not because he was not adjudicated as having a substance abuse issue—but because it was not properly incorporated into the terms of petitioner's improvement period and a statutorily required family case plan.

---

[18] As indicated, the only drug treatment-related service identified in the appendix record is a drug abuse evaluation conducted by the screening facility, during which petitioner denied a substance abuse disorder. The record reflects no further efforts by DHHR to seek to require petitioner to enroll in a substance abuse treatment program or rehabilitation facility.

Finally, we wish to make clear that this Court is not ignorant of, nor unconcerned with, petitioner's patently obvious efforts to avoid drug screening. We agree that the specter of substance abuse looms heavily over the proceedings below, as evidenced by the petition itself, the testimony adduced, and petitioner's brazen resistance to drug screening and possession of synthetic urine. However, it is the predominance of these issues which should have compelled a more stringent adherence to the adjudicatory process and the statutory requirements such as to eliminate any lack of clarity as to the conditions of abuse and neglect involved and the requirements placed upon petitioner to correct them. Because of these failures, the abuse and neglect process has failed to meaningfully address the alleged issues underlying this case and, as a result, K. L. has thus far been deprived of potential reunification with a father with whom he indisputably has a significant bond. In that regard, the proceedings have unfortunately "fail[ed] of their essential purpose." *Lilith H.*, 231 W. Va. at 180, 744 S.E.2d at 290.

Based upon the foregoing, we conclude that the circuit court erred in terminating petitioner's parental rights based upon 1) issues which were not the subject of petitioner's adjudication; and 2) failure to comply with an improvement period which was not properly implemented in accordance with statutory requirements.[19] We therefore

---

[19] Petitioner also assigns as error the circuit court's failure to interview K. L. prior to termination, after previously having indicated its intention to do so. West Virginia Code § 49-4-604(c)(6)(C) provides that the court "shall" consider the wishes of a child fourteen or older or "otherwise of an age of discretion as determined by the court" regarding termination. K. L., then nine years old, was not of the requisite age to *mandate* (continued . . .)

vacate that portion of the circuit court's January 4, 2022, order as to petitioner's parental rights, and remand for further proceedings as to petitioner including but not limited to reopening of adjudication, amendment of the subject petition, and/or implementation of a post-dispositional improvement period which comports with the requirements of West Virginia Code § 49-4-610(3), as appropriate in light of our ruling herein.[20]

## IV.  CONCLUSION

Therefore, for the reasons set forth herein, we vacate the January 4, 2022, order of the Circuit Court of Ohio County as to its termination of petitioner's parental rights and remand for further proceedings consistent with this opinion.

Vacated and remanded.

---

consideration of his wishes; however, the guardian ad litem recommended the court speak with K. L., indicating that conversing with him was "like [you're] talking to a mature teenager[.]"  The court agreed; however, upon determining that a post-dispositional improvement period would be ordered in lieu of termination, it found that speaking with K. L. was unnecessary at that time.

In light of our remand of this matter, we find it unnecessary to further address this assignment of error as well as petitioner's contention that the court's termination order was inadequate, and that he was entitled to a "disposition 5," i.e. a legal guardianship pursuant to West Virginia Code § 49-4-604(c)(5).

[20] By way of Rule 11 update, the parties advise that petitioner has been arrested for possession of a controlled substance during the pendency of this appeal.  Obviously, on remand, the circuit court may consider any intervening developments in determining the manner in which to proceed that best protects and serves the interests of K. L.  *See* W. Va. R. App. P. 11(j).