IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 15-0333

_____

IN RE S.W.

**FILED**
**November 5, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Brooke County
The Honorable Martin Gaughan, Judge
Civil Action No. 10-JA-11

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: October 14, 2015
Filed: November 5, 2015

James T. Carey, Esq.
Carey Law Office
Weirton, West Virginia
Counsel for Petitioners S.S. and H.S.

Sara Hawthorne Bohn, Esq.
Weirton, West Virginia
Guardian ad litem

Patrick Morrisey, Esq.
Attorney General
Michael Jackson, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent DHHR

Ann Marie Morelli, Esq.
Weirton, West Virginia
Counsel for K.M.

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl., *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

2. "'"The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).' Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008)." Syl. Pt. 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011).

3. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

Workman, Chief Justice:

This is a joint appeal by the paternal grandparents[1] and guardian ad litem of a child (hereinafter jointly referenced as "the petitioners" or separately referenced as "the grandparents" or "the GAL"). The petitioners appeal a circuit court order terminating the grandparents' legal guardianship of their grandchild, S.W. (hereinafter "the child"), and returning the child to his mother.[2] The Department of Health and Human Resources (hereinafter "the DHHR") also supports the petitioners' contentions in this appeal. Subsequent to thorough review of the pleadings and record designated for review, the briefs and oral arguments of the parties, and for the reasons stated herein, we reverse the order of the Circuit Court of Brooke County, West Virginia, terminating the grandparents' guardianship of S.W. and remand this matter for entry of an order consistent with this opinion.

I. Factual and Procedural History

S.W. was born in 2009. An abuse and neglect petition was filed on June 30, 2010, alleging that the child's mother, K.M., was under the influence of drugs while caring

---

[1]Because this case involves sensitive facts, we protect the identities of those involved by using only the parties' initials. *See State ex rel. W.Va. Dept. of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); *see also* W.Va. R. App. P. 40.

[2]Based upon this Court's stay of the circuit court's order returning the child to his mother, the child currently resides with his paternal grandparents.

for him. The DHHR placed the child in the care of his paternal grandparents, and a pre-adjudicatory improvement period was granted to the mother on September 29, 2010. The mother and the maternal grandparents were also granted visitation with the child.

On March 16, 2011, the GAL filed a motion to terminate the mother's pre-adjudicatory improvement period because she had tested positive for oxycodone and morphine on two separate occasions. The improvement period was terminated on March 24, 2011, and the mother admitted that she was abusing drugs.[3]

On May 12, 2011, the mother admitted that she had been under the influence of drugs in the presence of the child and had neglected to take reasonable care of the child due to her drug addiction. The circuit court adjudicated her as a neglectful parent. During a June 23, 2011, status hearing, the circuit court was advised that the mother had completed a rehabilitation program and was participating in an outpatient program.

On September 8, 2011, the circuit court granted the mother a post-adjudicatory improvement period, requiring her to discontinue her abuse of controlled substances and refrain from contact with felons. On November 10, 2011, the child was returned to the

---

[3]On April 14, 2011, the GAL also informed the circuit court that the mother was living with a registered sex offender.

mother's care, but legal custody remained with the DHHR. Approximately four months later, on March 9, 2012, the GAL filed a motion to return physical custody of the child to the DHHR because the mother had violated the terms of the post-adjudicatory improvement period by refusing to answer the door to her home and submit to a drug test. The child was thereafter removed from the mother's care and placed back in the custody of the paternal grandparents.

On July 12, 2012, the circuit court granted supervised visitation to the mother, contingent upon her cooperation with drug testing. The mother was unable to appear for a September 2012 hearing due to her incarceration on a charge of possession of drugs with intent to deliver. Subsequent to a June 21, 2013, dispositional hearing, the circuit court entered an order on August 5, 2013, stating that the mother had been arrested in September 2012 for possession with intent to deliver, had refused to be drug tested, and had exhibited erratic behavior. The court held that under West Virginia Code § 49-6-5(a)(5) (2012),[4] the child would remain in the physical custody of the paternal grandparents, with visitation permitted with the mother and maternal grandparents.[5]

---

[4]That section, now recodified as West Virginia Code § 49-4-604(b)(5) (2015), provided that the circuit court may commit the child temporarily to the State Department or a person who may be appointed guardian.

[5]The circuit court also stated that an abuse and neglect action was pending against the child's father, J.W. The father's parental rights to S.W. were ultimately terminated, and that aspect of this matter is not before this Court.

On September 3, 2013, the mother was released from incarceration and placed on probation for five years as a result of her guilty pleas to felony and misdemeanor drug charges. On December 12, 2013, the circuit court held a permanency hearing and granted legal guardianship to the paternal grandparents. The mother graduated from Drug Court on September 11, 2014,[6] and filed a "Petition to Overturn Legal Guardianship" on November 19, 2014. In that petition, she asserted that she had been in recovery for over one year, and she argued that her recovery and continued sobriety constituted a material change in circumstances justifying a modification of the custody of her son.

A hearing on the mother's petition was held on January 15, 2015. The mother testified concerning her strong bond with the child and her maintenance of sobriety. She indicated that the child calls her "Mommy," comes to her for safety and comfort, and sometimes throws tantrums in an effort to be permitted to stay with her. Ms. Gina Hicks, the mother's supervising officer and Mental Health Court Coordinator, testified that the mother had completed the rehabilitation program successfully and noted distinct improvements in the mother's performance during her participation in the program the second time. The mother's probation officer, Terry Stuck, testified that the mother was compliant with all

---

[6]The mother also married on June 6, 2014, and she now has another child, who is a half-sibling to S.W.

terms of her probation.

The paternal grandmother also testified concerning her bond with the child, and she explained that she has encouraged the mother's role in the child's life and had not tried to assume the role of mother. The GAL testified that the child wished to remain living at his grandparents' home, with visits to his mother's home.

On April 1, 2015, the circuit court terminated the grandparents' legal guardianship and ordered the transfer of the child to the mother within ten days. The grandparents and the GAL appeal that ruling, contending the lower court ruled in favor of the mother based upon her right to parent her child, rather than in accordance with the statutorily-required analysis of the child's best interests. Specifically, the petitioners contend that the circuit court (1) ignored the best interests of the child by modifying the dispositional order and removing the child from the grandparents and (2) erred in modifying the dispositional order two years after it was entered, depriving the child of permanency. The petitioners further contend that if a transfer of custody to the mother is mandated, the circuit court should provide a period of gradual transition, as well as continued association with the grandparents.

On April 16, 2015, this Court granted a stay of the transfer of custody. In

updates to this Court, the mother reports that she, her husband, and her newborn child are residing in the basement of her parents' home and are in the process of renovating separate living quarters for their own family at that location. Although the mother has been married since June 6, 2014, she and her current husband were briefly separated prior to the most recent October 2015 update on the status of the child. S.W., currently in the first grade, has remained in the custody of the paternal grandparents since 2010, with the exception of the four-month period in which custody was transferred back to the mother in 2012.

## II. Standard of Review

This Court's standard of review in a child abuse and neglect case was addressed in *In re Beth Ann B.*, 204 W.Va. 424, 513 S.E.2d 472 (1998). This Court explained that we employ the two-pronged standard of review enunciated in the syllabus of *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996):

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

We have also held that the following standard of review is applicable in custody decisions:

> "'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the

6

ruling will be reversed on appeal.' Syllabus point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975), *superseded by statute on other grounds as stated in David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989)." Syl. Pt. 1, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008).

Syl. Pt. 2, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011). With these standards as guidance, we address the issues raised in this case.

## III. Discussion

The petitioners contend that the circuit court erred in ignoring the best interests of the child in modifying the dispositional order and terminating the legal guardianship of the grandparents. The mother's petition requesting modification of the guardianship order was premised upon West Virginia Code § 49-6-6 (2014). That statute clearly provides two prerequisites to modification of disposition. First, there must be a showing of material change in circumstances, and second, the alteration must serve the best interests of the child. As applicable to these proceedings,[7] West Virginia Code § 49-6-6(a) provides, in pertinent part:

> Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing . . . and may modify a dispositional order if the court finds by clear and convincing evidence a material change in circumstances and that

---

[7]West Virginia Code § 49-6-6 was recodified, effective May 17, 2015, as West Virginia Code § 49-4-606 (2015), with minor modifications that do not affect the issues currently before this Court.

7

such modification is in the child's best interests. . . .

In her memorandum to the circuit court in support of her petition, the mother also cited West Virginia Code § 44-10-3 (2014). That statute also distinctly provides that a request for a termination of legal guardianship must be supported by evidence of a material change in circumstances and must serve the best interests of the child. Further, West Virginia Code § 44-10-3(j) specifies that the burden of proof is upon the *movant,* in this case, the child's mother. The relevant portion of that statute provides as follows:

> (i) The court, the guardian or the minor may revoke or terminate the guardianship appointment when:
> . . . .
>> (4) A petition is filed by the guardian, the minor, *a parent* or an interested person or upon the motion of the court stating that the minor is no longer in need of the assistance or protection of a guardian due to *changed circumstances and the termination of the guardianship would be in the minor's best interest.*
>
> (j) For a petition to revoke or terminate a guardianship filed by a parent, the *burden of proof is on the moving party* to show by a preponderance of the evidence that there has been a material change of circumstances and that a revocation or termination is in the child's best interest.

W.Va. Code § 44-10-3(i)(4) and 44-10-3(j) (emphasis added). Additionally, Rule 46 of the West Virginia Rules for Child Abuse and Neglect is consistent with the statutory requirements and states that modification of a court order is permissible upon a showing of a material change in circumstances and clear and convincing evidence that modification is

8

in the best interests of the child.

Based upon the rule and the statutory mandates outlined above, the December 12, 2013, disposition in this case, providing legal guardianship to the paternal grandparents, may be modified only if a circuit court finds *both* a change in circumstances and that modification is in the child's best interests. The petitioners argue that the record in this case reveals insufficient evidence to support a conclusion that returning the child to the mother is in his best interests. In presenting evidence on the best interests issue, the mother relied primarily on her status as the child's mother and the bond they had established. She did not identify any other significant evidence indicating that a modification of the custodial arrangements would be in the child's best interests. She argues on appeal that the GAL's recommendations should not be accorded significant weight because the GAL failed to view the interactions between the mother and the child. The mother also argues that the opinions of the child's school counselor, Mr. Paul Weigel, should be disregarded because Mr. Weigel was treating the child for unrelated issues at school and did not observe the mother/child relationship.[8]

_____

[8]The school issues prompting the therapy with Mr. Weigel involved an incident involving the child's behavior issues on the school bus and his inability to concentrate in his Kindergarten class. Mr. Weigel recommended that the child should remain with the grandparents due to the potential traumatic effects of separating him from his current caretakers. In her most recent October 2015 update to this Court, the GAL explained that the child is still engaged in therapy with Paul Weigel. Mr. Weigel informed the GAL that the child has responded well to the consistency of rules implemented by the grandparents in their

(continued...)

To the contrary, the grandparents, GAL, and DHHR adamantly contend that the circuit court erred in modifying the dispositional order based upon such extremely limited evidence that a modification would serve the best interests of the child. The DHHR asserts that while the mother unquestionably underwent a substantial and positive change in her own circumstances, there is a glaring absence of evidence that a modification of the disposition is in the child's best interests. The petitioners contend that the circuit court essentially ignored the key element of the best interests of the child and elevated the rights of the mother over those of the child.

Although this Court has observed that a circuit court has statutory authority to modify a guardianship, evidence regarding each of the two elements required by the statute must be presented. As explained above, both West Virginia Code § 49-6-6 and West Virginia Code § 44-10-3 clearly identify the two requirements for alteration of custody in this case. The significance of the best interests of the child cannot be overstated; it is a statutory requirement and has been repeatedly and strenuously emphasized by this Court. In syllabus point three of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), for instance, this Court explained: "Although parents have substantial rights that must be protected, the primary goal

---

[8](...continued)
home. He also indicated that the child seem "bothered" about the most recent changes in the mother's living arrangements.

in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." *See also* Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.") (internal citation omitted); Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child.").

This Court also addressed these requirements in the specific context of a termination of guardianship in *In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015). In that case, this Court recognized that an analysis of the best interests of the child is imperative in matters involving modification of custody. This Court's evaluation of the guardianship issues in *K.H.* specified that the statutory scheme requires consideration of the change in circumstances, as well as the best interests of the child. *Id.* at 258, 773 S.E.2d at 24; *see also In re Haylea G.*, 231 W.Va. 494, 745 S.E.2d 532 (2013) (examining grounds for termination of legal guardianship). The statutes and rule prohibit modification of an existing guardianship in the absence of evidence that the child's best interests will be served by the modification and that there has been a change in circumstances.

Upon review of the present case, this Court finds the evidentiary record

11

insufficient to support a conclusion that S.W.'s best interests would be served by modifying the disposition and terminating the paternal grandparents' legal guardianship.[9] Were this simply a question of the safety and welfare of this child, this Court would be compelled to conclude that the evidence indicates that both the mother and the paternal grandparents would be stable and venerable caretakers for this child. But, that is not the question before this Court. The statutes and rule prohibit a modification of the disposition in this case in the absence of a showing that the child's best interests would be served by altering the status quo. We commend the mother on her extremely substantial success in conquering her addiction issues, and we encourage her meaningful and extensive involvement in the life of her son. At this juncture, however, there is insufficient evidence to indicate that an alteration in the custody arrangements would be in the best interests of the child. He is entitled to a sense of stability and permanency in his life. This Court has consistently emphasized the importance of achievement of permanency to the greatest degree possible. *See In re: Isaiah A.,* 228 W.Va. 176, 718 S.E.2d 775 (2010); *In re: Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996); *In re*

---

[9]This Court observes that the abuse and neglect statute at issue here, West Virginia Code § 49-6-6, requires clear and convincing evidence that the best interests of the child will be served by the modification. Rule 46 of the West Virginia Rules for Child Abuse and Neglect also requires clear and convincing evidence. The statute addressing a termination of legal guardianship, however, requires only a preponderance of the evidence on the issue of best interests. *See* W.Va. Code § 44-10-3. We find that the evidence on that issue in this case is insufficient to meet either of those evidentiary standards.

*Brian D*., 194 W.Va. 623, 461 S.E.2d 129 (1995).[10]

As revealed in the record, the home provided for this young boy by his paternal grandparents has been the only stable home he has known. The circuit court order did not identify any factors indicating that termination of the guardianship would be in the child's best interests, basing the conclusion primarily upon the mother's change in circumstances. The petitioners emphasize the fact that the mother was asked to address the issue of how removing the child from his grandparents would serve the child's best interests. She responded by saying that a child should be with his mother, but she did not offer evidence on issues which might impact the best interests analysis. For instance, she was unaware of issues such as whether the child would have to change schools if custody were to be transferred. The record is devoid of sufficient evidence indicating that alteration of custody would serve the child's best interests at this time.

Based upon the foregoing, we reverse the April 1, 2015, order of the circuit court.[11] On remand to the circuit court, the rights of the mother and maternal grandparents

---

[10]*See also* Syl. Pt. 6, *Holstein v. Holstein*, 152 W.Va. 119, 160 S.E.2d 177 (1968) ("A change of custody should not be based only upon speculation that such change will be beneficial to the children.").

[11]The Petitioners presented two arguments regarding gradual transition and the right to continued association, applicable only if this Court had affirmed the holding of the circuit court. Based upon this Court's reversal of the circuit court, we do not address those

(continued...)

13

to visitation with the child should be specifically established. As in other child custody matters, the visitation schedule will be subject to modification as circumstances warrant and as the child advances in age.[12]

The visitation schedule should provide extensive contact between the child and his mother and "should give due consideration to . . . work and home schedules and to the parameters of the child's daily school and home life, and should be developed in a manner intended to foster the emotional adjustment" of the child "while not unduly disrupting the lives of the parties or the [child]." *Honaker v. Burnside*, 182 W.Va. 448, 452, 388 S.E.2d 322, 325 (1989). This Court also explained in *Honaker*:

> [u]ndoubtedly, ... [the child's] best interests must be the primary standard by which we determine [the child's] rights to continued contact with other significant figures in [the child's] life. Clearly, "these interests are interests of the child and not of the parent. Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital."

*Id.* (footnotes and internal citations omitted).

No matter how artfully or deliberately the trial court judge draws

---

[11](...continued)
alternative arguments.

[12]The mother's continued recovery efforts will obviously have an impact on her rights to visitation and the potential expansion of those rights. If she suffers a relapse into drug abuse, the visitation schedule should be modified, within the discretion of the circuit court.

14

the plan for these coming months, however, its success and indeed the chances for [the child's] future happiness and emotional security will rely heavily on the efforts of these . . . [caretakers]. The work that lies ahead for . . . them is not without inconvenience and sacrifice on both sides. Their energies should not be directed even partially at any continued rancor at one another, but must be fully directed at developing compassion and understanding for one another, as well as showing love and sensitivity to the [child's] feelings at a difficult time in all their lives.

*Id*. at 453, 388 S.E.2d at 326-27. Fortunately, this appears to be a situation in which all parties are cooperating remarkably well to provide emotional security for the child, and we encourage the continuation of this unity of effort for the benefit of the child.


IV. Conclusion

The April 1, 2015, order of the Circuit Court of Brooke County is reversed, and this matter is remanded with directions for the entry of an order establishing visitation rights for the mother and maternal grandparents.


Reversed and remanded with directions.

15