No. 22-847 - *In re H.T.*

**FILED**

**May 23, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BUNN, Justice, dissenting:

While petitioner, M.L., has a long history of DHS intervention, DHS did not seek to terminate her parental rights until she made significant progress toward recovery and sought to establish a relationship with her youngest child, H.T., by filing a motion to modify her disposition. Because the majority opinion essentially punishes M.L. for her efforts and fails to properly consider H.T.'s best interest in maintaining the status quo, I respectfully dissent. Even though I do not believe that M.L. has established that her reunification with H.T. is presently in the child's best interests, I disagree with the majority's conclusion that H.T.'s best interests required terminating M.L.'s parental rights.

I begin by supplementing the facts provided by the majority to give a more complete picture of the events below. H.T. was born drug addicted, and DHS filed an amended petition against M.L. to include H.T. in an ongoing abuse and neglect proceeding involving M.L.'s twin children, who are not at issue in this case. During the abuse and neglect proceeding, M.L. was unable to successfully complete a six-month improvement period. While she successfully completed a postpartum substance abuse treatment program, her drug screening was sporadic. She produced negative screens for just over a month at one point, and for about six weeks at another, before she finally quit screening

1

altogether at the end of October 2019. Also during this improvement period, M.L. engaged in some supervised visitation with H.T. The number of visits, their nature and duration, as well as the span of time over which they occurred are not apparent from the record.

During a hearing held in December 2019, at the conclusion of M.L.'s improvement period, counsel for DHS recounted that M.L. had temporarily benefitted from services and had "a period" of positive results, but then she "just stop[ped] participating." Given her failure to successfully compete her improvement period and overcome her addiction, counsel for DHS opined that "the best option she can have is a Disposition 5 *until she can find her own way to maintain that consistency and sobriety*." (Emphasis added). Thus, it is apparent that during the abuse and neglect proceedings involving H.T., M.L.'s sobriety lasted only six weeks at the longest, yet DHS did not seek termination, instead expressing its willingness to offer M.L. an opportunity to achieve consistency and sobriety on her own.

A DHS court summary dated January 30, 2020, reported that M.L. was having weekly supervised visitation with H.T. that was going well, and that M.L. admitted she had relapsed. According to the report, M.L.

> was informed Disposition [5] would not take her rights away even if that was the disposition that was determined appropriate by the [c]ourt. She was told she could get things straightened out and seek to modify that type of disposition. She was told it was not time to give up and it never is.

2

The report further detailed that M.L.'s substance abuse had been ongoing for many years, she had been sporadic in drug screening and participating in services, and she was unable to maintain sobriety when she was experiencing stress. In fact, it was reported that M.L. "will demonstrate the capability to pull herself together for a period of time[,] but after a few months she seems to begin struggling and then [experiences] complete dissolution of all the skills she has gained, and she relapses." Nevertheless, DHS reported that it "would not object to a Disposition [5] . . . which would allow [M.L.] to make progress of her own accord and [in] her own time. Upon being able to establish and maintain sobriety[,] she could then return to this [c]ourt and seek a modification of such a disposition."

At a subsequent disposition hearing in June 2020, DHS advised the circuit court that it did not object to M.L. being granting a Disposition 5. H.T.'s Guardian ad Litem ("GAL") similarly stated her belief that "a Disposition 5 is reasonable and appropriate and in the children's best interest[.]" Accordingly, the circuit court granted M.L. a Disposition 5.[1] H.T. remained in the custody of his father, and M.L. was permitted visitation at the father's discretion.

---

[1] Though the dispositional order is not included in the appellate record, there is no dispute that M.L. was granted a Disposition 5 with respect to H.T. and his twin half-siblings who are not at issue in this appeal.

3

From August 2020 to April 2021, M.L. participated in a long-term recovery program at the Clarksburg Mission and Recovery Center. Lou Ortenzio, the executive director of the Center, testified that M.L. "seriously worked [on] her recovery," was involved in classes at the Center, and went to outside AA, NA, and Celebrate Recovery meetings. She also complied with the Center's drug testing requirements, and Mr. Ortenzio was not aware of her failing any drug screen during her time in the program. She also received psychiatric or psychological counseling through agencies that work cooperatively with the Center. After M.L. completed the program in April 2021, Mr. Ortenzio continued to see her when she was at the Center participating in services offered by other entities who utilized the Center's facilities. He also spoke to her on the phone several times. Mr. Ortenzio described M.L. as having had a "[d]ramatic recovery," and stated that he had observed no evidence of a relapse.[2]

After H.T.'s father suddenly and unexpectedly died of an overdose in June 2021, the court granted temporary guardianship of H.T. to his paternal relatives J.A. and D.A. M.L. did not have a phone number for these relative guardians and used Facebook messenger to communicate with them and to schedule visitation with H.T. M.L. had two

---

[2] The record reflects that M.L. did engage in some visitation with H.T. during this time and following her completion of the program, and she often participated in video calls with H.T.'s father and was able to watch H.T., who was still too young to be verbal, during those calls.

in-person visits and a few video chats with H.T. Neither DHS nor H.T.'s GAL sought to alter M.L.'s parental rights following the death of H.T.'s father.

M.L. waited until she had been drug-free for a year and then, on September 16, 2021, filed a pro-se motion to modify the dispositional order as to H.T. and seeking reunification. After M.L. filed her pro-se motion for modification, H.T.'s guardians blocked her from their social media so that she could no longer communicate with them. The circuit court appointed new counsel for M.L., and counsel filed a second motion to modify the disposition in February 2022. At a hearing on the motion, M.L.'s counsel expressed his hope that the court might, at least, grant formal visitation. DHS and H.T.'s GAL then responded with a joint motion to modify M.L.'s Disposition 5 and to terminate her parental rights. Thereafter, H.T.'s guardians, J.A. and D.A., filed a motion to intervene and seeking termination of M.L.'s parental rights. The circuit court granted the motion to intervene, and ultimately denied M.L.'s motion to modify. Instead, the court granted DHS and the GAL's joint motion to modify, and terminated M.L.'s parental rights to H.T.

### A. Modification

Procedurally, this case was before the circuit court on competing motions to modify disposition, one by M.L., and a joint motion by DHS and H.T.'s GAL. West Virginia Code § 49-4-606 governs modification of a dispositional order and states in relevant part:

5

> Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing . . . and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

W. Va. Code § 49-4-606(a). *Accord* W. Va. R. Child Abuse & Neglect P. 46 (providing that a circuit court may modify or supplement an order, following a hearing, "upon a showing of a material change of circumstances" and "if, by clear and convincing evidence, it is in the best interest of the child."). Simply put, West Virginia Code § 49-4-606(a) "clearly provides two prerequisites to modification of disposition. First, there must be a showing of material change in circumstances, and second, the alteration must serve the best interests of the child." *In re S.W.*, 236 W. Va. 309, 313, 779 S.E.2d 577, 581 (2015).

**1. Material change in circumstances.** M.L.'s motion to modify her disposition outlines that in the months following the circuit court's June 30, 2020 order granting her a Disposition 5 as to H.T., she

> completed long-term in-patient rehabilitation. She has been clean and sober for over fifteen months. She is drug testing regularly. She is employed and has a fit, apt, and suitable home.

> In addition, during her recovery, she continued to exercise regular visitation with the Infant Respondent, [H.T.] (sometimes in person and more often through video chat via the Facetime video app). Said visitation occurred regularly at behest of the Respondent Father.

(Footnote omitted).

6

These are the material changes in circumstances relied upon by M.L. in seeking a modification of the circuit court's order granting her a Disposition 5, as explained in M.L.'s motion: "Based on the Respondent Mother's completion of a drug rehabilitation program, her ongoing sobriety, and her keeping of steady employment and safe and suitable home, there is clear and convincing evidence of a material change in circumstances."[3]

The fact that M.L. had experienced a material change in circumstances is supported by a DHS report prepared in anticipation of a hearing on the modification motions, which stated "[t]he Department [DHS] must acknowledge that [M.L.] has had a material change in circumstances by completing treatment at St. Joseph's Recovery Center and seeking the support of the Clarksburg Mission in maintaining her sobriety since February 2021." Even the circuit court's order denying modification and terminating M.L.'s parental rights concluded "[t]here has likely been a tentative material change of circumstance in that the Respondent Mother, but for two (2) positive drug screens (to the parties' knowledge), has been sober for a period of time since the granting of the alternative disposition in this matter."[4]

---

[3] The majority incorrectly states that "[a]ll parties cited D.T.'s death as a basis for their motions." Maj. Op. at 10. M.L.'s motion does acknowledge D.T.'s death, but as the quotes above demonstrate, she did not rely on D.T.'s death as the basis for setting forth a material change in circumstances.

[4] Curiously, the majority opinion declares that "the circuit court's modification of the original Disposition Five was based solely on the death of D.T." Maj. Op. at 11, n.9. I find nothing in the circuit court's order to support the conclusion that its

Rather than address the merits of the facts relied upon by M.L. to show a material change in circumstances, the majority erroneously refers to the second prong of the modification test to conclude, in a footnote, that the circuit court rejected them based on its assessment of the child's welfare. The majority compounds its flawed analysis by failing to address whether the circuit court erred by purportedly rejecting M.L.'s efforts at sobriety as establishing a material change in her circumstances.[5]

The evidence produced by M.L. was sufficient to meet the first prong of the two-part test required to modify a disposition. As the record plainly demonstrates, M.L. had a ten-year history of CPS involvement and a pattern of multiple relapses after achieving periods of sobriety. When she was granted a Disposition 5 in relation to H.T., she had been unable to successfully complete the terms and conditions of her improvement period. She had produced negative drug screens over a six-month period, but she missed multiple

---

modification was based solely on the death of D.T. Furthermore, had the court ruled on this basis alone, without considering the child's best interest, there would be additional grounds for finding the circuit court erred in granting the DHS/GAL's joint motion to modify. *See In re S.W.*, 236 W. Va. 309, 313, 779 S.E.2d 577, 581 (2015) (explaining that West Virginia Code § 49-4-606(a) "clearly provides two prerequisites to modification of disposition. First, there must be a showing of material change in circumstances, and second, the alteration must serve the best interests of the child.").

[5] While the circuit court's order is not a model of clear legal reasoning, I do not interpret it as rejecting M.L.'s asserted basis for a material change in circumstances. Rather, after finding there likely was a material change, the circuit concluded that M.L. failed to establish the required second prong of the analysis, the child's best interests, which I discuss below.

screens during that period and ultimately suffered yet another relapse. However, when M.L. filed her motion for modification, she had been clean and sober for over fifteen months, was employed, had a suitable home, and was regularly drug testing. At a hearing in April 2022, M.L. testified that she had been sober for nineteen months. Granted, the drug-screen records M.L. produced with her modification motion contained two isolated positive screens.[6] M.L. claimed these were false positives caused by allergy medication she was taking; however, she failed to provide admissible evidence supporting her claim. Nevertheless, Lou Ortenzio, the executive director of the Clarksburg Mission and Recovery Center testified that M.L. had experienced a "[d]ramatic recovery," and, based on his regular meetings with her and seeing her when she was at the Center participating in other services, he had no reason to suspect that she had suffered a relapse. Even the GAL commented that she was "very impressed with how good [M.L.] look[ed]" and was "proud of the progress [she had] made." Unquestionably, M.L. experienced a material change in circumstances and met the first prong of the modification test.

The DHS and GAL were similarly required to support their joint motion to modify with evidence of a material change in circumstances warranting the modification.

---

[6] The drug screen results are not in the appendix record, but it appears that one of the positive screens occurred in September 2021, and the other occurred on an unidentified date in 2021.

The circuit court failed to make proper findings in this regard, but the death of H.T.'s custodial parent, D.T., plainly supplied the requisite change.

**2. Best Interests Of The Child.** The second factor that must be established before modification may be granted is that "the alteration must serve the best interests of the child." *In re S.W.*, 236 W. Va. at 313, 779 S.E.2d at 581. Here, the circuit court improperly analyzed the best interest of H.T. only in the context of granting custody of the child to M.L., concluding "it is contrary to the welfare of the Infant Respondent to modify the Respondent Mother's alternative disposition and be returned to her physical and legal custody." The majority provides a similarly limited analysis, concluding that "M.L.'s long history of DHS involvement, on-again and off-again sobriety, and the exhaustion of services she could receive made her an inappropriate placement for H.T." Maj. Op. at 14.

While I believe that M.L. has made tremendous progress toward becoming a fit parent, I agree that, at this point, granting her physical custody of H.T. would not be in the child's best interests. However, neither the circuit court nor this Court were limited solely to considering the disposition of reunification. During an early hearing on M.L.'s motion to modify, her counsel explained that his client was "in a much better position now," and expressed the hope that the circuit court would, at a minimum, grant court-ordered visitation. I do not dispute the evidence that J.A. and D.A. have been H.T.'s primary parental figures since his birth. They have provided him a stable and loving home,

and he has undoubtedly developed a strong bond with them. However, given the level of sobriety achieved by M.L., and her employment and stable home, I believe H.T.'s interests are best served by denying both motions for modification, leaving the Disposition 5 in place to preserve the status quo as to H.T.'s custody, and providing him an opportunity to form a relationship with his biological mother through court-ordered visitation. *See, e.g.*, *In re S.C.*, 245 W. Va. 677, 690, 865 S.E.2d 79, 92 (2021) (acknowledging that a "guardianship under disposition 5 is the only dispositional alternative that lends itself to leaving Petitioner's parental rights intact while recognizing the paramount best interest of the child," and finding that under the facts presented "disposition 5 [would] not interfere with the permanency plan for the child. There is no question that she is in a stable family environment with her great-grandparents. So, their appointment as the child's guardians under disposition 5 maintains the status quo of her family unit.").

When M.L. was in the throes of her addiction, a relationship with H.T. was not possible, and a Disposition 5 was determined to be in H.T.'s best interest. "At the conclusion of H.T.'s initial abuse and neglect proceeding, DHS met its burden to prove that Disposition Five was appropriate and *in H.T.'s best interest*." Maj. Op. at 11 (emphasis added). At that time, M.L. was repeatedly informed that the Disposition 5 would permit her "to make progress of her own accord and [in] her own time," and that "[u]pon being able to establish and maintain sobriety[,] she could then return to [the circuit court] and seek a modification of such a disposition." M.L. did what was suggested; she worked on

11

her sobriety and made dramatic progress. Yet when she achieved more than a year of sobriety and sought a modification as DHS told her she would have the option to do, she was met with a competing motion to modify and to terminate her parental rights. Notably, DHS and the GAL sought to modify the Disposition 5 and terminate M.L.'s parental rights only in response to her motion and more than nine months after D.T.'s death—an obvious punishment for her effort to play a role in her son's life. The Disposition 5, deemed to be in H.T.'s best interest when his mother was in a much worse state, was then improperly modified by the circuit court in favor of termination. *See In re B.W.*, 244 W. Va. 535, 539-40, 854 S.E.2d 897, 901-02 (2021) (criticizing circuit court, in part, for modifying disposition by imposing "a *harsher* disposition, despite the apparent improvement in Petitioners' circumstances from those at the conclusion of the previous dispositional hearing").

The majority relies, in part, on *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577. In that case we found the child's best interests were served by maintaining the status quo and directing the lower court to establish a visitation schedule. We commended the mother "on her extremely substantial success in conquering her addiction issues" and encouraged her "meaningful and extensive involvement in the life of her son." *Id.* at 315, 779 S.E.2d at 583. This case should have been similarly resolved. Maintaining the status quo with J.A. and D.A. serving as H.T.'s custodial guardians while providing scheduled, court-ordered visitation between M.L. and H.T. would have served H.T.'s joint interests in a stable,

12

loving home and the opportunity to form a positive relationship with his biological mother, so long as she continued in her sobriety.

### *B. Termination*

For many of the same reasons I discuss above, I believe the circuit court erred by terminating M.L.'s parental rights at this juncture. Again, when M.L. was unsuccessful in her battle against her addiction, DHS, the GAL, and the circuit court all agreed that termination was unnecessary and that H.T.'s best interests were served by granting M.L. a Disposition 5. However, once she had made great strides toward sobriety, and fatefully filed a motion to modify her disposition, termination was deemed to be the only option that served H.T.'s best interest. If termination was not warranted when M.L. could not successfully complete an improvement period due to her addiction, it certainly was not warranted after she successfully completed a long-term recovery program; had, with two isolated exceptions, produced consistently negative drug screens for nineteen months; had been described as having a "[d]ramatic recovery" by the executive director of a long-term recovery center, who had observed no evidence of a relapse; was complimented on how well she looked during a modification hearing; and had obtained employment and a stable home with her mother. These facts belie the circuit court's conclusion that there was "no reasonable likelihood that the conditions of neglect or abuse [could] be substantially corrected." W. Va. Code § 49-4-604(c)(6). *See also* Syl. pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (per curiam) ("'Termination of parental rights, the most drastic

13

remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604(c),] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected.' Syllabus point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)."). While M.L. admittedly has a long history of failing to overcome her addiction, at the time she sought modification she had made significant progress toward substantially remedying the conditions of neglect and abuse that led to her losing custody of H.T. A proper resolution for this case would have been to deny the motions to modify, preserve the status quo with J.A. and D.A. serving as H.T.'s guardians, and ordering scheduled visitation between H.T. and M.L., provided she continues to maintain her sobriety.

Lastly, I note that the circuit court did allow for post-termination contact between M.L. and H.T, but rather than provide a schedule of visitation, the court improperly ordered that it could occur only at H.T.'s request. This is problematic for several reasons. First, H.T. is a young child who does not possess the appropriate level of maturity to request visitation. Furthermore, there has been a lengthy passage of time since H.T. had any visitation with M.L., so it is improbable that he would request visitation with her now. Finally, the reality of placing the choice to request visitation on H.T. is that his guardians will be exercising their discretion in this respect, and they ceased all contact with M.L. after she filed her petition for modification in obvious retaliation for her filing. By

14

allowing continued contact, the circuit court had to conclude that it was in H.T.'s best interest. "Undoubtedly, [a child's] best interests must be the primary standard by which we determine [the child's] rights to continued contact with other significant figures in [the child's] life." *Honaker v. Burnside*, 182 W. Va. 448, 452, 388 S.E.2d 322, 325 (1989). We also have made clear that "visitation is the right of the child; as such, this right cannot be held hostage." *In re K.S.*, 246 W. Va. 517, 530, 874 S.E.2d 319, 332 (2022). To the extent that the circuit court ordered continued contact between H.T. and M.L., it should have managed the visitation by court order setting an appropriate schedule and guidelines.

For all of the above stated reasons, I respectfully dissent. I am authorized to state that Justice Wooton joins me in this dissent.