**FILED**

**March 3, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **S.S. and L.S.**

**No. 25-306** (Hampshire County CC-14-2023-JA-21 and CC-14-2023-JA-22)

## MEMORANDUM DECISION

Petitioner Father H.S.[1] appeals the Circuit Court of Hampshire County's April 14, 2025, order denying, in part, his motion to modify disposition, arguing that the circuit court erred in failing to adopt all of his recommended modifications.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2023, the Department of Human Services ("DHS") initiated abuse and neglect proceedings by filing a petition against the petitioner and the mother (together, "the parents"), who were in the process of obtaining a divorce. The circuit court held an adjudicatory hearing in August 2023, at which time the parents entered written stipulations.[3] After "reviewing on the record each item set forth in the stipulations," the court adjudicated the parents as abusive and/or neglectful and found S.S. and L.S. to be abused and/or neglected children. The court granted both parents an improvement period.

At a dispositional hearing in January 2024, the circuit court found that the petitioner and the mother had successfully completed their improvement periods and dismissed the matter. In a subsequent written order, the court noted that the parents' divorce was now final. The court's dispositional order "restored [the parties] to a [fifty-fifty] custodial schedule . . . per *Hampshire County Domestic Action* 22-D-157" with certain agreed-upon modifications not at issue in this appeal. The court also noted that the parents had raised a "concern regarding the . . . mother's

---

[1] The petitioner appears by counsel James E. Smith II. The respondent mother, C.S., is self-represented. Counsel Julie A. Frazer appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner did not include the petition, his written stipulation, or a transcript of the adjudicatory hearing in the appendix record. As such, the DHS's allegations of abuse and neglect are not discernable from the record on appeal. At the February 2025 hearing, however, the guardian proffered that the parents' conduct during their divorce proceeding "got so bad . . . that the . . . [f]amily [c]ourt [j]udge transferred [the matter] . . . to a JA case" and that this "was not your typical abuse and neglect case."

1

desire to take the . . . children . . . to the Philippines to visit the mother's family" and that the petitioner objected to such visits. "After hearing argument from the parties which is more fully set forth on the record," the court ordered that the parents "not engage in international travel with the children until the [children's] next birthdays; and that any international travel shall require providing the other parent with all dates, locations, flights, accommodations, itineraries, and persons involved prior to departure."[4] The court specifically warned the mother "of the consequences of taking the minor children abroad and not returning them." The petitioner did not appeal from the final dispositional order.

In September 2024, the petitioner filed a motion to modify and supplement the circuit court's dispositional order pursuant to Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, as he "remained extremely concerned" that the mother would abscond with the children to the Philippines where she maintained citizenship.[5] The petitioner attached the report of an expert in international family law and, per the expert's recommendations, requested that the court modify its dispositional order to: (1) declare West Virginia the children's home state and the United States their habitual residence; (2) prohibit the mother from obtaining or possessing passports of any country for the children without the petitioner's consent or a court order; (3) prohibit the mother from traveling internationally with the children until each reached the age of eighteen without the petitioner's consent or a court order; (4) give the petitioner sole legal custody over decisions concerning the children's international travel; and (5) give the petitioner control over any and all passports issued to the children.[6] The petitioner alleged that the information contained in his motion and the attached expert's report constituted "substantial . . . circumstances and conditions that were not readily argued and made known and available" to the court at disposition.

The circuit court took up the petitioner's motion at an evidentiary hearing in October 2024, at which time it heard the testimony of the petitioner's expert, an attorney with experience in international family law.[7] The expert reviewed the contents of his report, stating that he had weighed "the benefits to the children of going to [the Philippines]" against his assessment of "the risks and danger of a visit turning into . . . a 'wrongful detention,'" and did not believe the potential benefit outweighed the "relatively high" risk. In fact, he "[did not] see . . . a real need or benefit from visiting [the Philippines]." The witness further explained that since "the Philippines is not a signatory with the [United States] to the [1980] Hague Convention," its remedies in the event of a parental abduction would be unavailable to the petitioner, who would be left with "very few remedies because . . . there is little effective way to get the children back [through] the Philippine

---

[4] The petitioner did not include a transcript of the dispositional hearing in the record on appeal, so it is unclear what arguments the parents presented to the circuit court at that time.

[5] The mother is a permanent resident of the United States.

[6] Per the petitioner's motion, neither child currently had a valid United States passport or a passport issued by any other country.

[7] In September 2024, the petitioner filed an additional motion to modify the parties' shared parenting plan, which the court also considered at this hearing.

[legal] system." The witness also noted that while the United States requires a court order or the signature of both parents to issue a passport to a child, that as a Philippine citizen, the mother could unilaterally apply for "Filipino passports [for the children] and nobody would ever know." To protect against these risks, the witness recommended that the court modify its disposition to include the five "lines of defense" detailed in his report and listed in the petitioner's motion. The witness admitted that he had not spoken to the mother in developing his opinion and had solely relied on the petitioner's representations. The mother then proffered that she would "never" abduct the children but merely wished for them to be able to visit her family, including her father who was "not in good condition," and that she intended to reside in the United States and was working toward becoming a United States citizen.

The hearing was continued to February 2025. Prior to the hearing, the case was reassigned to a different judge and the guardian filed her report. The guardian noted that both the petitioner and the mother continued to abuse the legal system, demeaned and/or alienated the other parent, and caused the children harm with their ongoing acrimonious conduct. However, because she "found the report and testimony provided by . . . [the] expert witness[] to be both informative and convincing," the guardian recommended that the court make a modification to "not allow[] the [children] to travel to the Philippines unless agreed upon by both parents until they reach the age of [eighteen]." Before the court, the petitioner's counsel argued in support of the five modifications recommended by the expert, noting that the issue of the children traveling to the Philippines had not been "really flushed out" at the original disposition. The mother had no objection to the court declaring West Virginia the children's home state and the United States their habitual residence but objected to the expert's other recommendations regarding the children's yet-to-be-obtained passports and potential future travel. In her proffer to the court, the guardian acknowledged that "there [wa]s no substantial . . . change in circumstances [to] warrant a modification."

Ultimately, the court noted that while it understood the petitioner's concerns and the basis for his expert's recommendations, it "respectfully disagree[d]." The court concluded it would not enter "an[] [o]rder saying the [children] can't go to the Philippines," would not implement all of the requested modifications, nor "completely follow[] [the guardian's] recommendation." The court noted that it was "not saying that [the] expert[] [was] wrong . . . in what he is saying the law is" but that "[the children] have heritage in [the Philippines]" and that realistically it would "take an agreement of the parties" for international travel to occur. The court also noted that the prior dispositional order included "a time provision before . . . the children could go to the Philippines"—not until after their next birthdays—and that it was concerning that the petitioner now did not "want to live up to that agreement even though that time frame [had] passed." In a subsequent written order, the court stated that upon considering the testimony, arguments, and case file, the parents' "[fifty-fifty] allocation of custodial responsibility" and "decision making responsibility" would remain in place.[8] Regarding the petitioner's motion to modify and supplement the dispositional order, the court concluded that—other than specifying West Virginia as the children's home state and the United States as their habitual residence—the recommended

---

[8] Regarding the petitioner's motion to modify the parties' shared parenting plan, the court ordered that an additional provision—that "each party . . . be granted a fifteen minute grace period when meeting" to exchange the children—be incorporated, per the parents' agreement.

modifications were "not adopted and . . . hereby denied." The court noted that because both parents must sign the children's United States passport applications, the additional modifications were unnecessary. The petitioner now appeals from the court's "Final Order on [the Petitioner's] Motion to Modify and Supplement Dispositional Order and Motion to Modify Shared Parenting Plan."

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the circuit court erred by failing to modify disposition to adopt all of his expert witness' recommendations. Specifically, the petitioner argues that the court did not consider or appreciate that the Hague Convention's remedies would be unavailable should the mother abscond with the children to the Philippines and "misconstrued the weight of the evidence" regarding her ability to obtain Philippine passports for the children without the petitioner's knowledge or consent. At the outset, we note that the court was presented with evidence—via the expert's testimony and his report—regarding the availability of the Hague Convention's protections as well as the possibility the mother could obtain Philippine passports for the children.[9] The record indicates that the court considered this evidence in making its ruling but ultimately found it unpersuasive, making no findings that the children were at risk of abduction by their mother. Therefore, this argument does not entitle the petitioner to relief, as this Court will not reweigh the evidence presented to the circuit court. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."); *see also In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025) (explaining that, as a reviewing court, "[w]e . . . do not reweigh the evidence").

Moreover, West Virginia Code § 49-4-606(a) governs the modification of dispositional orders and provides that, after a proper party has filed a motion, "the court shall conduct a hearing . . . and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests." *See also In re S.W.*, 236 W. Va. 309, 313, 779 S.E.2d 577, 581 (2015) (explaining that the modification statute "clearly provides two perquisites to modification of disposition" the first of which is that there must be a showing of a material change in circumstances); Syl. Pt. 1, in part, *In re Cesar L.*, 221 W. Va 249, 654 S.E.2d 373 (2007) (explaining that the plain language of the modification statute permits a proper party "to move for a modification of the child's disposition where a change of circumstances warrants such a modification"); W. Va. R. P. Child Abuse & Neglect Proc. 46 (regarding the required findings to modify or supplement a prior order). Here, the petitioner purports that the information about the Philippines outlined in his motion to modify, with its attached expert's report, is sufficient to meet the threshold "material change in circumstances" requirement. We disagree, as the petitioner's continued concern regarding the

---

[9] Despite the petitioner's adamant assertions to the contrary, at the February 2025 hearing, the court made clear that it had "read the record," including the parties' filings and transcripts, and specifically acknowledged its awareness that the Hague Convention's protections would not apply should the mother attempt to abduct the children, and in that event, the petitioner would have to apply to a Philippine court for relief.

mother's future conduct and his decision to present additional (and/or more thorough) arguments to the court in support of his ongoing objection to the children's international travel does not equate to changed circumstances. The circuit court heard the parents' arguments regarding the children visiting the Philippines at disposition (the specifics of which the petitioner chose *not* to disclose in the record on appeal). In light of these arguments, the court entered a dispositional order permitting the children to travel internationally when certain conditions were met. The record does not indicate that a change in circumstance occurred following the court's initial disposition, other than the passage of time and the children reaching their next birthdays, as the court had contemplated. Because the record does not indicate that the prerequisite "material change in circumstances" existed to support modifying the circuit court's disposition, we see no reversible error in the court's order denying the petitioner's requested changes.[10]

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 14, 2025, order is affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing

**DISSENTING**:

Chief Justice C. Haley Bunn
Justice Gerald M. Titus III

**Bunn, Chief Justice, and Titus, Justice, dissenting:**

We dissent to the majority's resolution of this case. We would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, we believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, we respectfully dissent.

---

[10] We recently cited and discussed several examples of circumstances in which we *have* found a "material change of circumstances" within the meaning of Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-606(a). *See In re P.K.*, 252 W. Va. 253, --, 921 S.E.2d 893, 901-2 (2025).

5