IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-847

_____

FILED

**May 23, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re H.T.*

_____

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Case Number: CC-24-2019-JA-42

AFFIRMED

_____

Submitted: January 10, 2024
Filed: May 23, 2024

M. Tyler Mason, Esquire
Leslie & Mason Law, PLLC
Dellslow, West Virginia
Counsel for Petitioner Mother, M.L.

Patrick Morrisey, Esquire
Attorney General
Charleston, West Virginia
Lee A. Niezgoda, Esquire
Assistant Attorney General
Fairmont, West Virginia
Counsel for Respondent West Virginia
Department of Health and Human
Resources

Heidi M. Georgi Sturm, Esquire
Fairmont, West Virginia
Guardian ad Litem for H.T.

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a separate opinion.

JUSTICE BUNN dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1. "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

2. "As a general rule, the least restrictive alternative regarding parental rights to custody of a child under West Virginia Code § 49-4-604 (2020) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical

development [delayed] by numerous placements." Syllabus Point 1, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

3. "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

4. "The controlling standard that governs any dispositional decision remains the best interests of the child." Syllabus Point 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).

Armstead, Chief Justice:

M.L.[1] has been a respondent in numerous child abuse and neglect proceedings over the last decade, impacting all four of her children. In this matter, relating only to her fourth child, H.T., she appeals the order of the Circuit Court of Marion County denying her motion for modification of her prior disposition and the termination of her parental rights.

After review, we find that the circuit court did not err in modifying M.L.'s prior disposition and terminating M.L.'s parental rights.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning as early as 2012, M.L. has had a long history of DHS[2] intervention. In August 2012, DHS removed M.L.'s oldest son from her custody. In that

---

[1] M.L. is the biological mother of H.T. Given the sensitive nature of the facts in this child abuse and neglect matter, we continue our long-standing practice of using initials to identify the parties. *See* W. Va. R. App. P. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. . . .").

[2] For purposes of abuse and neglect matters, the responsible agency is now the Department of Human Services ("DHS"). The agency formerly known as the West Virginia Department of Health and Human Resources ("DHHR") was terminated effective January 1, 2024. *See* W. Va. Code § 5F-1-2 (2023) (amended 2024). The effect of this law was the division of DHHR into three separate agencies – the Department of Health Facilities, the Department of Health, and the Department of Human Services.

(continued . . .)

prior proceeding, M.L. was alleged to have exposed her eldest son to alcohol abuse. She

was given time to make improvement but was ultimately unable to establish sobriety or

successfully complete improvement periods. In that matter, the circuit court granted

disposition pursuant to West Virginia Code §49-4-604(c)(5)(2020)("Disposition Five"),[3]

---

M.L.'s involvement with DHS extends back to the time when DHHR was the operative entity. For clarity, we will refer to this agency in this opinion by its current moniker, DHS.

[3] There are varying dispositions a circuit court can utilize in dispensing with child abuse and neglect matters. Disposition Five provides:

> (5) Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court. The court order shall state:
> (A) That continuation in the home is contrary to the best interests of the child and why;
> (B) Whether or not the department has made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family, or some portion thereof, and to prevent or eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home;
> (C) Whether the department has made reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101 *et seq.*, to parents with disabilities in order to allow them meaningful access to reunification and family preservation services;
> (D) What efforts were made or that the emergency situation made those efforts unreasonable or impossible; and
> (E) The specific circumstances of the situation which made those efforts unreasonable if services were not offered by the department. The court order shall also determine under

(continued . . .)

2

and awarded legal guardianship of the eldest child to M.L.'s mother, allowing M.L. to retain her parental rights.

In October 2014, M.L. gave birth to twin daughters. On June 9, 2017, DHS received a referral that M.L. was abusing methamphetamine on a daily basis, dealing drugs out of the home she shared with her mother (who had previously been granted legal guardianship of M.L.'s first child), and was exposing all three of her children to drug use and drug dealing. DHS began offering services to M.L. but those efforts failed and DHS filed a non-emergency petition alleging abuse and neglect on January 16, 2018. As a result of that petition, M.L. was adjudicated as an abusing and neglectful parent and, on January

---

what circumstances the child's commitment to the department are to continue. Considerations pertinent to the determination include whether the child should:
> (i) Be considered for legal guardianship;
> (ii) Be considered for permanent placement with a fit and willing relative; or
> (iii) Be placed in another planned permanent living arrangement, but only in cases where the child has attained 16 years of age and the department has documented to the circuit court a compelling reason for determining that it would not be in the best interests of the child to follow one of the options set forth in subparagraphs (i) or (ii) of this paragraph. The court may order services to meet the special needs of the child. Whenever the court transfers custody of a youth to the department, an appropriate order of financial support by the parents or guardians shall be entered in accordance with § 49-4-801 through § 49-4-803 of this code;

Prior to the 2020 amendments to this section, these provisions were found in West Virginia Code § 49-4-604(b). *Compare* W. Va. Code § 49-4-604(b) (2019) *with* W. Va. Code § 49-4-604(c) (2020).

15, 2019, she was granted a six-month post-adjudicatory improvement period. During this improvement period, M.L. was sporadic in her compliance with random drug screenings and minimally participated in adult life skills services, resulting in those services being terminated. On July 9, 2020, M.L. was granted another Disposition Five with regard to the twins, once again retaining her parental rights while they remained in the physical and legal custody of their father. Critical to the issues in this matter, during the course of each of these two prior proceedings, M.L. would experience periods of sobriety, followed by serious relapses, directly impacting her ability to parent.

It is within the context of this extended involvement with DHS that the March 27, 2019, amended petition was filed alleging that M.L. and D.T.[4] had abused and neglected H.T., their newborn son. H.T. was born drug addicted in March 2019, with his umbilical cord testing positive for buprenorphine and amphetamines. Indeed, H.T. suffered from "shakes" and had to be given morphine due to the withdrawal symptoms he experienced. DHS alleged that M.L. had taken Methamphetamine, Adderall/Vyvanse, Xanax, Suboxone, as well as Gabapentin, during the time she was pregnant with H.T. Based upon these allegations, the circuit court transferred physical and legal custody of

---

[4] D.T. was the biological father of H.T. and lived with M.L. at the time the amended petition was filed. His untimely death, discussed later in this Opinion, is the triggering event that led the circuit court to conclude that M.L.'s parental rights should be terminated.

4

H.T. to DHS by order entered on March 28, 2019. DHS then placed H.T. with D.T.'s paternal aunt and uncle, J.A. and D.A., upon H.T.'s release from the hospital.

Following the March 28, 2019, order, the circuit court conducted a preliminary hearing on April 9, 2019. M.L. failed to appear at this hearing and the circuit court scheduled an adjudicatory hearing.[5] D.T. was later adjudicated as abusing and neglectful and was granted a post-adjudicatory improvement period. On July 15, 2019, the circuit court granted physical and legal custody of H.T. to D.T. after successful completion of his improvement period. Over the course of two months, M.L. attended in-patient treatment, only to relapse on methamphetamine. Eventually, on June 30, 2020, M.L. was

---

[5] M.L.'s brief states that "the matter was set for preliminary hearing, which was waived by M.L." The reference to the appendix record for this statement points to the order entered on May 14, 2019, which clearly states M.L. did not appear for the hearing: "[M.L.] did not attend the preliminary hearing in this matter thus this matter shall be scheduled for adjudication as it relates to her[.]" Thus, it was not possible for M.L. to waive the preliminary hearing when she wasn't there. Our Rules of Appellate Procedure are abundantly clear, the Statement of the Case must be "[s]upported by appropriate and specific citations to the appendix or designated record. . . ." We have held that "[a]ny failure by litigants to observe carefully the requirements of our appellate rules is expressly disapproved.[]" Syl. Pt. 1, in part, *Matter of Lindsey C.*, 196 W. Va. 395, 473 S.E.2d 110 (1995).

We would also note that in our review of the record, we find that there is no explanation about how M.L. was adjudicated with regard to H.T. Although this issue is ultimately immaterial to the resolution of this matter, we identify the gaping hole in the procedural history where the adjudication of M.L. is concerned.

granted Disposition Five with regard to H.T. and M.L. retained her parental rights, while physical and legal custody of H.T. remained with D.T.[6]

On June 11, 2021, D.T. died of a drug overdose, leaving H.T. without a legal guardian. As a result, on September 13, 2021, the circuit court granted temporary guardianship of H.T. to J.A. and D.A., who had cared for H.T. prior to his placement with D.T. and were caring for H.T. immediately following D.T.'s death. Indeed, though D.T. had physical and legal custody of H.T., in fact, J.A. and D.A. had been the primary caretakers for H.T. since his birth. On September 16, 2021, M.L., acting as self-represented litigant, filed a motion to modify disposition, pursuant to West Virginia Code § 49-4-606(a),[7] to regain custody of H.T. As grounds for her motion, M.L. alleged that: "My son

_____

[6] There is no order in the appendix record memorializing the disposition regarding H.T. From the bench, the circuit court awarded Disposition Five as to the twins and M.L. "without objection." *See* W. Va. R. P. Child Abuse and Neglect 36(a). ("At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition. . . ."). The July 9, 2020, written order grants Disposition Five only as to the twins. Though the record does not affirmatively show a Disposition Five was granted M.L. as to H.T., the parties do not dispute that such was granted.

[7] A modification of Disposition Five is contemplated in certain circumstances as set forth by statute:

(a) Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and

(continued . . .)

6

[H.T.'s] father [overdosed] living with his niece. I have [finished] all necessary requirements by the court and have become a responsible adult." M.L. obtained new counsel and, on December 14, 2021, filed another motion for a status conference "regarding disposition, placement and/or reunification." Following the status conference, on February 8, 2022, M.L., by counsel, filed a motion for modification of Disposition Five, alleging that D.T. had passed away and that based upon M.L.'s "completion of a drug rehabilitation program, her ongoing sobriety, and her keeping of steady employment and safe and suitable home, there is clear and convincing evidence of a material change in circumstances" warranting a modification of Disposition Five. Thereafter, on March 21, 2022, DHS and H.T.'s guardian ad litem filed a joint motion, seeking to modify Disposition Five based upon the death of D.T. and to terminate M.L.'s parental rights. Ten days later, on March 31, 2022, J.A. and D.A. filed a motion to intervene in the matter and to terminate M.L.'s parental rights. On April 6, 2022, the circuit court granted the motion to intervene.

Following multiple hearings on the cross-motions to modify disposition, the circuit court modified the prior Disposition Five and terminated M.L.'s parental rights. The circuit court made specific findings that M.L. had successfully completed in-patient

---

convincing evidence a material change of circumstances and
that the modification is in the child's best interests.

W. Va. Code § 49-4-606(a) (2015). We have said that the plain language of this statute allows "a child, a child's parent or custodian, or the [DHS] to move for a modification of the child's disposition where a change of circumstances warrants such a modification." Syl. Pt. 1, in part, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007).

drug treatment but later tested positive for methamphetamine on two occasions.[8] The circuit court found that this was not the first time that M.L. had successfully attained a modicum of sobriety, only to relapse.

Thus, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, specifically finding that:

> M.L. has, on several occasions over the course of multiple CPS cases, obtained and maintained sobriety for a period and then relapsed time and again. [M.L.] has exhausted every improvement period and every remedial service available[] and has never been able to maintain her sobriety for more than a limited period of time.

The circuit court also found that during her three abuse and neglect cases for four children over the course of a decade, M.L. was granted Disposition Five in each matter for each of her children and, in the process, had exhausted all improvement periods available to her. Indeed, the court found, over the years, she never corrected the conditions of abuse and

---

[8] M.L. maintains that these were false positives. However, the circuit court specifically found "[t]hat at least twice [M.L.] tested positive for methamphetamine while she claimed to be sober." Within six months of the hearing on the motions for modification and to terminate parental rights, M.L. tested positive for methamphetamine. At the hearing, on cross-examination, M.L. made self-serving statements that such positive screen was false. Additionally, M.L. attempted to admit into evidence a letter written by her doctor that apparently concluded that the latest positive screen was a false positive. The circuit court properly excluded this letter as inadmissible hearsay. *See* W. Va. R. Evid. 802. No appeal of this determination was taken.

neglect. Further, the circuit court found that it would be in H.T.'s best interest to terminate

M.L.'s parental rights because M.L.:

> [H]as not shown she would be able to care for H.T. as she has never parented H.T. due to his drug exposed birth that led to him being immediately placed in foster care at the home of [J.A. and D.A.]. [M.L.] has never been alone with H.T., has never parented him, has never had him for an overnight visit – has merely been a very peripheral person who he has seen on very rare occasion.

Accordingly, the circuit court found that M.L. received services during her two previous proceedings and found that there were no more services that could be offered to her that had not already been offered. Further, the court concluded that there was no reasonable likelihood that M.L. could substantially correct the conditions of abuse and neglect in the foreseeable future. It is from this order that petitioner appeals.

## II. STANDARD OF REVIEW

The standard of review in cases such as this is clear:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible

9

in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re B.P.*, 249 W. Va. 274, 895 S.E.2d 129 (2023). With this standard in mind, we turn to the arguments raised in this appeal.

## III. ANALYSIS

M.L. raises two issues in her appeal. First, she argues that the circuit court erred in denying her motion for modification of the previously granted Disposition Five. Second, she avers that the circuit court erred in terminating her parental rights. We will examine each of these issues in turn.

### A.    Motion for Modification

M.L., DHS, and the guardian ad litem each moved for modification of the prior disposition in this case pursuant to the provisions of West Virginia Code § 49-4-606, which requires a finding by "clear and convincing evidence [of] a material change of circumstances and that the modification is in the child's best interests." All parties cited D.T.'s death as a basis for their motions.[9]

---

[9] As an additional basis for her motion, M.L. cited to her becoming "a responsible adult." She also stated that because she "complet[ed] a drug rehabilitation program, her ongoing sobriety, and her keeping of steady employment and safe and suitable home, there is clear and convincing evidence of a material change in circumstances" warranting modification of Disposition Five. However, the circuit court plainly rejected this as a ground supporting modification when it found "[t]hat it is contrary to the welfare

(continued . . .)

10

Those competing motions may be characterized as M.L. seeking a less restrictive alternative, and DHS and the guardian ad litem seeking a more restrictive alternative. This posture required the circuit court to determine whether the disposition could be modified and which motion, if any, should be granted. M.L.'s motion simply did not show by clear and convincing evidence that there was a material change in circumstances warranting a less restrictive alternative than a Disposition Five. Though she should be commended for her continuing efforts at sobriety, she still tested positive for methamphetamine. Further, her lengthy history of DHS involvement, on-again and off-again sobriety, and the exhaustion of services she could receive made her an inappropriate placement for H.T. M.L. was repeating the same conduct that led to DHS intervention in the first place. Her efforts were viewed by the circuit court as merely her latest short-lived period of sobriety.

At the conclusion of H.T.'s initial abuse and neglect proceeding, DHS met its burden to prove that Disposition Five was appropriate and in H.T.'s best interest. Now, as the movant, M.L. had the burden to show by clear and convincing evidence that a less restrictive alternative was warranted based on a change in circumstances and that the less restrictive disposition, up to and including reunification, was in H.T.'s best interests. In

of [H.T.] to modify [M.L.'s] alternative disposition and [H.T. should not] be returned to her physical and legal custody." Thus, the circuit court's modification of the original Disposition Five was based solely on the death of D.T.

11

this sense, D.T.'s death cannot be credited to M.L.'s burden to prove a change in circumstances warranting a different, less restrictive alternative. Critically, the child's circumstances had no bearing on any change in *her* circumstances.[10] In this context, denial of M.L.'s motion to modify disposition to a less restrictive alternative was not in error insofar as the dispositional alternative M.L. requested was not supported by a material change in her circumstances and was not in the best interest of H.T. *See* Syl. Pt. 1, *In re Cesar L.*

Having determined that M.L. failed to meet her threshold burden to modify the disposition, we move to DHS and the guardian's motions to modify. As we noted above, H.T. was in D.T.'s physical and legal custody at that time of D.T.'s death. We have previously found that the termination of one parent's parental rights to be a material change in circumstances, warranting modification of the other parent's disposition. *See In re E.S.*, No. 16-0821, 2017 WL 678881 at *2 (W. Va. Feb. 21, 2017) (memorandum decision). Here, though D.T.'s rights were not terminated, the same logic applies. D.T.'s death warranted a review of the prior disposition and brought to the forefront the question of whether M.L. was a suitable placement for H.T., satisfying the requirement of a material change in circumstances. Because D.T.'s death left H.T. without a physical or legal

---

[10] West Virginia Code § 49-4-606 speaks generally in terms of a "change in circumstances" without specificity given to whose circumstances. D.T.'s death meets this criterion as a technical matter but the change in circumstances must be viewed in the context of a "different disposition" as requested in the motion to modify.

guardian, it is clear that D.T.'s death resulted in a material change in circumstances for the child, warranting a reexamination of his placement.

Although D.T.'s death constituted a change of circumstances, the requested modification was only appropriate if it was found to be in the best interest of H.T. In this regard, we have long held that the best interests of children in child abuse and neglect proceedings are paramount. We have found that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). Further, "when a petition alleging abuse and neglect has been filed, a circuit court has a duty to safeguard the child and provide for his or her best interests." *In re George Glen B. Jr.*, 207 W.Va. 346, 355, 532 S.E.2d 64, 73 (2000). Additionally, "the 'best interests of the child' – has become the ultimate benchmark by which all custody decisions are appraised. While this Court has also observed that the rights of the parents are entitled to respect and protection, the rights of the children are paramount[.]" *In re Frances J.A.S.*, 213 W. Va. 636, 643, 584 S.E.2d 492, 499 (2003).

We considered the best interest of the child standard in the context of a modification of disposition in *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). In that case, the mother, who had a long history of both CPS involvement and drug abuse, petitioned the circuit court following her successful completion of Drug Court to set aside the prior disposition, which had placed her child with the paternal grandparents. *See id.*,

236 W. Va. at 312, 779 S.E.2d at 580. The circuit court set aside the prior placement and ordered the return of the child to the mother. *Id*. We reversed, finding that even though the mother had shown a material change in circumstances, it was not in the child's best interest to move him from his placement. *Id.*, 236 W. Va. at 315, 779 S.E.2d at 583.

In this case, there were competing motions for modification of Disposition Five. Plainly, the death of H.T.'s father and physical and legal custodian warranted the circuit court's examination of the appropriate placement for H.T. M.L.'s long history of DHS involvement, on-again and off-again sobriety, and the exhaustion of services she could receive made her an inappropriate placement for H.T. Based upon these factors, M.L. did not meet her burden to prove entitlement to a modification. Conversely, DHS and the guardian met their burden demonstrating that D.T.'s death was a material change in circumstances warranting modification of the prior disposition. After reaching this conclusion, the circuit court then had to determine if DHS met its burden to terminate M.L.'s parental rights.

B. Termination of M.L.'s Parental Rights

Having found that the modification of M.L.'s disposition was justified following D.T.'s untimely and tragic death, we now analyze whether termination of M.L.'s parental rights was warranted. M.L. relies solely upon this Court's prior decision in *In re S.C.*, 245 W. Va. 677, 865 S.E.2d 79 (2021), to support her contention that the circuit court improperly terminated her parental rights. In that case, this Court reversed the circuit

14

court's termination of the father's parental rights. *Id.* However, the basis for that reversal was quite different than the facts present in this matter. The father in *In re S.C.* demonstrated that he no longer used illicit drugs, had moved out of state and started a family, and was gainfully employed. *Id.*, 245 W. Va. at 682, 865 S.E.2d at 83. In this matter, M.L. continued to test positive for illicit drugs, even after completion of her most recent drug treatment program.

Second, the circuit court in *In re S.C.* made no findings supporting its conclusion that there was "no reasonable likelihood that the conditions of neglect and abuse can be substantially corrected" and that the termination of parental rights was "necessary for the welfare of the child." *Id.*, 245 W. Va. at 690, 865 S.E.2d at 92. In this case, the circuit court made the requisite factual findings supporting both the "reasonable likelihood" and "necessary for the welfare" prongs. Specifically, the circuit court found that termination of M.L.'s parental rights was in the best interest of H.T. because M.L. had a long, demonstrable history of CPS involvement, was never able to maintain sobriety, and that H.T. had a right to consistency and permanency in his life.

The statutory definition of "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" supports the circuit court's termination of M.L.'s parental rights, providing:

> "No reasonable likelihood that conditions of neglect or abuse
> can be substantially corrected" means, based upon the evidence
> before the court, the abusing adult or adults have demonstrated

15

an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Those conditions exist in the following circumstances:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning;

. . . .

(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child;

W. Va. Code § 49-4-604(d)(1 & 3) (2020).

We have held:

As a general rule, the least restrictive alternative regarding parental rights to custody of a child under West Virginia Code § 49-4-604 (2020) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development [delayed] by numerous placements.

Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of

16

neglected children, [West Virginia Code § 49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.

Syl. Pts. 1 and 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

There was ample evidence found within the circuit court's order and the record in this case demonstrating that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was necessary for H.T.'s welfare to terminate M.L.'s parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting the circuit court to terminate parental rights in such situations.). The circuit court outlined that the present proceeding was not M.L.'s first experience with the abuse and neglect system. She had two prior proceedings relating to three other children, that all concluded with M.L. receiving a Disposition Five resolution. The circuit court found that there were no additional services of which M.L. could avail herself that could potentially remedy the conditions of abuse and neglect. Indeed, the record demonstrated that M.L. continued to test positive for drugs following her self-proclaimed sobriety.

M.L.'s argument that she achieved sobriety and should have H.T. returned to her custody is unpersuasive because she tested positive for drugs following her completion of the latest in-patient program she attended. Although she avers that one of these test results was a false positive, she failed to offer any admissible evidence aside from her own self-serving statements supporting that contention. Thus, the circuit court did not err in

17

determining that termination of M.L.'s parental rights was in the best interest of H.T. when confronted with M.L.'s recurring, sporadic periods of sobriety, followed by spirals into addiction.[11]

The circuit court's options at the time of the modification hearing were to keep H.T. in the kinship placement with J.A. and D.A. to keep M.L.'s parental rights intact or terminate M.L.'s parental rights and allow H.T. to be adopted. We have previously stated that "the precedent of this Court supports the proposition that children are entitled to permanency to the greatest degree possible." *In re Isaiah A.*, 228 W. Va. 176, 182, 718 S.E.2d 775, 781 (2010). We reiterate that "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014).[12]

---

[11] The circuit court specifically found that it is in H.T.'s best interest to terminate M.L.'s parental rights:

> In the present cases, [M.L.] has not shown she would be able to care for H.T. as she has never parented H.T. due to his drug-exposed birth that led to him being immediately placed in foster care at the home of [J.A. and D.A.]. [M.L.] has never been alone with H.T., has never parented him, has never had him for an overnight visit – has merely been a very peripheral person who he has seen on a very rare occasion[.]

[12] We have previously rejected assertions similar to those made by M.L., finding that the argument of continuing Disposition Five and placing children in "long term foster care is the best option for these young children is also without merit because the respondent failed to show that she would in the future be able to care for her children." *In re Katie S.*, 198 W. Va. 79, 89, 479 S.E.2d 589, 599 (1996). Here, M.L.'s continuous failure to remedy her drug addiction, despite several efforts over the course of a decade, demonstrates that she has failed to establish she would be able to care for H.T. in the foreseeable future.

H.T.'s welfare is the guiding factor in this matter. The circuit court had to determine whether it was in H.T.'s best interest to allow M.L. to retain her parental rights and keep H.T. in his kinship placement in the hope that possibly at some point in the future M.L. might finally break the shackles of addiction. The circuit court did not err in determining that H.T.'s best interest demanded M.L.'s parental rights be terminated, to allow H.T. permanency through adoption. The circuit court did not have to "exhaust every speculative possibility of parental improvement before terminating parental rights." Syl. Pt. 1, in part, *In re R.J.M.* Indeed, we have affirmed termination of parental rights in a similar situation. *See In re J.C.*, No. 21-0437, 2022 WL 293515 (W. Va. Feb. 1, 2022) (memorandum decision). In *In re J.C.*, we affirmed a modified disposition based upon a material change in circumstances where a mother "had seven years to address her issues," had failed to do so, and such modification was in the best interest of the child to "provide him with the stability and permanency he desires." *Id*. at *5.

In this situation, given M.L.'s long, documented history of substance abuse and the necessity of establishing permanency for H.T., the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of M.L.'s parental rights was in the best interest of H.T.

## IV. CONCLUSION

Accordingly, the circuit court's termination of M.L.'s parental rights is affirmed.

Affirmed.