IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

**FILED**

**May 30, 2025**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-611

IN RE Z.D.-1, Z.D.-2, Z.L.-1, and Z.L.-2

Appeal from the Circuit Court of Kanawha County
The Honorable Maryclaire Akers, Judge
Civil Action Nos. 21-JA-446, 21-JA-447, 21-JA-448, 21-JA-449

AFFIRMED, IN PART; VACATED, IN PART; AND REMANDED

Submitted:  March 4, 2025
Filed: May 30, 2025

Sandra K. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
James Wegman, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

Joseph H. Spano, Jr., Esq.
Pritt & Spano, PLLC
Charleston, West Virginia
Guardian ad Litem

JUSTICE WALKER delivered the Opinion of the Court.

1.    "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syllabus Point 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

2.    "'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.' Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)." Syllabus Point 5, *In re N.R.*, 242 W. Va. 581, 836 S.E.2d 799 (2019).

3.    "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate

maturity to make such request.  The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest."  Syllabus Point 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

WALKER, Justice:

In this child abuse and neglect case, which we consider for a second time, Petitioner mother A.L.[1] again challenges the circuit court's failure to rule on her motion for a post-adjudicatory improvement period and the subsequent termination of her parental rights as to her four children. She also appeals the circuit court's denial of post-termination visitation with the children. We find that the circuit court implicitly denied the post-adjudicatory improvement period based on the same findings it relied on to terminate Petitioner's parental rights. And, because the dispositional decision to terminate parental rights is supported by the record on appeal, we conclude that the circuit court did not abuse its discretion in either respect. But due to the age of the children and evidence in the record that the children have a bond with Petitioner, we vacate the portion of the dispositional order denying post-termination visitation and remand for the circuit court to consider whether visitation would be in the best interests of the children and to make findings to that end.

---

[1] Consistent with our practice in cases involving sensitive facts, we identify the parties by initials only. *See In re Jeffrey R.L.*, 190 W. Va. 24, 26 n.1, 435 S.E.2d 162, 164 n.1 (1993). We also use numerical designations to distinguish between the children who have the same initials.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Prior to the underlying child abuse and neglect proceeding filed in 2021, Child Protective Services (CPS) became involved with the family in 2018 after Z.L.-1 gained access to a handgun and was injured when he accidentally discharged the weapon. The Department of Human Services (DHS) implemented a safety plan at that time. Various subsequent referrals were made to CPS that the children were frequently unsupervised and left in potentially dangerous situations due to that lack of supervision. Specifically, one referral indicated that one of the children was found sleeping in the bed of a truck, and another alleged that the children were frequently asking neighbors for food while Petitioner was gone for several days with her boyfriend. Police were called to the residence on multiple occasions to address the concerns. Petitioner was rarely present when police arrived, but contended, on occasion, that the residents of her apartment complex were inventing allegations against her. With these ongoing concerns, CPS maintained an open case and provided services consistent with the implementation of the safety plan.

Next, in the summer of 2020, Z.L.-1, then twelve years old, took Petitioner's car and wrecked it with other children in the car. Z.L.-1 was transported to the hospital, where it was ascertained that he had THC in his system. DHS continued providing services after the accident, but Petitioner was reportedly not compliant with that mode of intervention, despite indicating that she was overwhelmed. The CPS worker reported that Petitioner was "openly rude" and that "the extent of her lack of cooperation could be

described at best as blatant." The CPS worker further noted that Z.L.-1's bond[2] required the imposition of a 7:00 P.M. curfew that Petitioner did not in any way attempt to enforce. It appears from the record that a child abuse and neglect petition was filed in 2020 stemming from these allegations and the failure to comply with safety services, and that it was ultimately dismissed in late 2020 or early 2021.[3]

A new child abuse and neglect petition was filed in August 2021 after Z.D.-1, age six at the time, found a firearm in an upstairs bedroom and accidentally shot himself. Petitioner was downstairs and called 911. However, when interviewed at the hospital, Petitioner initially told officers that she and Z.D.-1 were coming into their house when someone walked up behind them and opened fire or, alternatively, that someone broke into the home and shot him. Petitioner maintained that story even after medical personnel informed her that there was gunshot residue on her child's hands and that the wound was inflicted at close range. She later recanted her version of events, indicating that a male friend had left a pistol in her home, and that the child found it. DHS filed the August 2021 petition soon after, detailing the prior DHS intervention to maintain the safety of the children considering shortcomings with Petitioner's supervision of the children, and that

---

[2] The record is not clear whether Z.L.-1's bond stemmed from charges related to the accident or otherwise.

[3] Documentation related to the prior case is not included in the record, but the prior case is directly referenced in the underlying petition, which notes the allegations of lack of supervision that prompted the filing of a petition in 2020. The services rendered in that prior case and the dismissal of that action are referenced throughout the appendix.

the lack of supervision had resulted in a second gunshot wound to a child who found an unsecured firearm.

The circuit court adjudicated Petitioner as an abusing and neglectful parent after a September 2021 adjudicatory hearing, and her parental rights to the children were terminated by order dated May 18, 2022. Petitioner appealed that order to this Court, and we vacated the dispositional order terminating her parental rights on the basis that it only checked boxes on a form document indicating that Petitioner did not follow through with the applicable family case plan and that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected.[4] Because the circuit court did not include findings of fact or conclusions of law specific to Petitioner, we found the order too conclusory and remanded for the circuit court to enter an order that both addressed Petitioner's motion for a post-adjudicatory improvement period and contained sufficient findings to justify the dispositional decision to terminate parental rights, if made.[5]

On remand, the circuit court entered a new dispositional order, finding that termination of parental rights was the only appropriate dispositional decision because

> [Petitioner] has not made sufficient efforts required to rectify the circumstances which led to the filing of this Petition, namely, [Petitioner] has previously had a petition filed against her for lack of supervision or inappropriate supervision of her

[4] *In re Z.D.-1, Z.D.-2, Z.L.-1, and Z.L.-2,* No. 22-0458, 2023 WL 2385835, at *1-3 (W. Va. Mar. 7, 2023) (memorandum decision).

[5] *Id.* at *3.

children, and though she complied with services during the pendency of that action, another petition was filed against her less than a year later for lack of supervision or inappropriate supervision of her children, which resulted in a special needs child shooting off one of his fingers while unsupervised in [Petitioner's] home late at night, and this was the second child of [Petitioner's] to suffer a gunshot wound while not being appropriately supervised.

The circuit court further found that Petitioner had failed to follow through with a reasonable family case plan and other services, and that the best interests of the children would be served by terminating parental rights.[6] Petitioner moved for post-termination visitation but that was summarily denied. This appeal followed.

## II.     STANDARD OF REVIEW

Our appellate review of dispositional orders in abuse and neglect cases is governed by the following standard of review:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).[7]

With this standard in mind, we turn the parties' arguments.

---

[6] The permanency plan for all four children is guardianship in their kinship placement.

[7] Syl. Pt. 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

5

## III. ANALYSIS

On appeal, Petitioner raises similar grounds to those raised in her first appeal, contending that she should have been granted a post-adjudicatory improvement period and that there were less restrictive alternatives to the termination of her parental rights. And, though not raised as an independent assignment of error, Petitioner argues that the circuit court did not consider the best interests of the children when summarily denying post-termination visitation.

To Petitioner's argument that she should have been granted a post-adjudicatory improvement period, we are troubled that the circuit court made no explicit ruling on Petitioner's motion for an improvement period despite direction from this Court to do so on remand.[8] But the circuit court's findings are better developed in this second appeal and permit us to address the implicit denial of the improvement period on the same basis as the circuit court's stated reasons for terminating parental rights.

---

[8] The seemingly casual disregard of our prior instruction cannot be overlooked. That previous instruction was necessary to facilitate meaningful appellate review of a decision involving abused and neglected children—cases "recognized as being among the highest priority for the courts' attention," due primarily to the fact that "[u]njustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 4, in part, *In re Emily B.*, 208 W. Va. 325, 540 S.E.2d 542 (2000). By disregarding our instruction, the circuit court risked necessitating yet another procedural remand, creating an unjustified procedural delay harmful to the children and delaying permanency for them. Fortunately— or, perhaps, fortuitously—the order on appeal now contains sufficient findings for this Court to discern the bases for the implicit denial of a post-adjudicatory period.

Under West Virginia Code § 49-4-610(2)(B) (2015), a parent respondent *may* be granted an improvement period upon a showing by clear and convincing evidence that he or she is likely to fully participate. We have explained that "[c]ircuit courts are afforded discretion in deciding whether to deny an improvement period when no improvement is likely."[9] Here, as demonstrated by the findings in support of the termination of her parental rights, Petitioner had protracted involvement with DHS and was provided extensive services following the first gunshot incident and subsequent issues of lack of supervision, none of which prevented an additional gunshot incident. The record is replete with references to Petitioner's refusal to participate in prior services except to the extent required to regain custody of the children.

In *In re Emily & Amos B.*,[10] we explained that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period."[11] And, "an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged."[12] But Petitioner here had many opportunities to correct the conditions that became recurring issues of a lack

---

[9] *In re J.D.-1*, 247 W. Va. 270, 279, 879 S.E.2d 629, 638 (2022) (citing *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002)).

[10] 208 W. Va. 325, 540 S.E.2d 542 (2000).

[11] *Id.* at 336, 540 S.E.2d at 553.

[12] *Id.* at 334, 540 S.E.2d at 551.

of supervision requiring frequent DHS involvement, where intermittent participation on Petitioner's part delayed them from being fully addressed. The burden being on Petitioner to demonstrate that she would fully participate, it is not enough that she voiced a willingness to participate when her approach to services and participation in the past speaks otherwise. During the pendency of this case Petitioner was not drug screening at the frequency she was ordered, and the record indicates that Petitioner had become complacent regarding the supervision issues and was not making any meaningful progress. We thus find support in the record for the circuit court's implicit denial of the improvement period because Petitioner could not meet the burden of providing clear and convincing evidence that she would fully participate in one.

For similar reasons, we do not disturb the circuit court's conclusion that termination of parental rights was the appropriate dispositional decision. In bridging the standards applicable to improvement periods with those applicable to terminating parental rights, we have explained that "when a parent cannot demonstrate that he/she will be able to correct the conditions of abuse and/or neglect with which he/she has been charged, an improvement period need not be awarded before the circuit court may terminate the offending parent's parental rights."[13] The circuit court's primary basis for terminating parental rights under these circumstances was Petitioner's frequent involvement with DHS for the same or similar issues of a lack of supervision, improvement "under the watchful

---

[13] *Id.* at 336, 540 S.E.2d at 553.

8

eye" of DHS, and then backsliding into the same parenting deficits that created potential for serious harm to the children. And, the circuit court noted Petitioner's failure to follow through with a reasonable family case plan in that she both failed to complete the psychological evaluation and failed to consistently drug screen.

Though Petitioner argues that less restrictive alternatives could have been employed to avoid termination of parental rights, we have explained that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).[14]

The circuit court's findings are supported by the record and demonstrate Petitioner's inability to correct the conditions of abuse or neglect on her own or with help based on DHS's continuous and, frankly, exhaustive efforts to avoid termination of parental rights. We therefore affirm the circuit court's order in that respect.

However, we are persuaded that the circuit court's summary denial of post-termination visitation was hasty given the record evidence that at least some of the children were of sufficient age to express a desire to maintain contact with Petitioner and wished to

---

[14] Syl. Pt. 5, *In re N.R.*, 242 W. Va. 581, 836 S.E.2d 799 (2019).

9

do so.  DHS's argument in support of the summary denial of visitation is based on Petitioner's conduct that led to termination of her rights, but ignores that "the right to post-termination visitation is a right of the child, not the parent . . . . It is the right of the child to continued association with those whom he shares an emotional bond which governs the decision."[15]  In *In re Christina L.*,[16] this Court articulated that, under some circumstances, the circuit court may order post-termination visitation:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request.  The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.[17]

Where record evidence of a bond indicates that the circuit court should have given the propriety of post-termination visitation more than a cursory look or where the children are of sufficient age to make a request for post-termination visitation, we have remanded for the circuit court to conduct that inquiry.  For example, in *In re Billy Joe M.*, before remanding for consideration of post-termination visitation, we explained that "the

---

[15] *In re Billy Joe M.*, 206 W. Va. 1, 5 n.10, 521 S.E.2d 173, 177 n.10 (1999) (internal citation omitted).

[16] 194 W. Va. 446, 460 S.E.2d 692 (1995).

[17] *Id.* at Syl. Pt. 5.

social services and legal systems have left these children with their parents for eleven and twelve years, with resultant strong emotional bonds. In such circumstances, the emotional bonds between the parents and the child(ren) should be closely evaluated to determine the appropriate course of action."[18] Similarly, in *In re Katie S.*[19] we remanded for the circuit court to consider whether post-termination visitation might be appropriate given the guardian ad litem's assertion that the child had emotional ties to her mother and love and affection for her but was unable to visit with her because the court summarily denied visitation noting only "termination means termination" and did not conduct an analysis of the child's best interests under those circumstances.[20]

At least two of the children here are of sufficient age to state whether they wish to have ongoing contact with Petitioner, and the record indicates evidence of a bond that the children may wish to maintain, provided that it is in their overall best interests to do so. The circuit court is therefore directed to allow the parties to develop record evidence of the existence of a bond and the wishes of the children, if any, and then make findings to

---

[18] *In re Billy Joe M.*, 206 W. Va. at 8, 521 S.E.2d at 180.

[19] 198 W. Va. 79, 479 S.E.2d 589 (1996).

[20] *Id.* at 90-91, 479 S.E.2d 600-01.

support its conclusion as to whether post-termination visitation should be ordered consistent with the children's best interests.[21]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the portion of the September 22, 2023, dispositional order of the Circuit Court of Kanawha County terminating parental rights. As to the summary denial of post-termination visitation, we vacate that portion of the order and remand for further proceedings consistent with this Opinion.

Affirmed, in part; vacated, in part; and remanded.

---

[21] After this case was briefed and argued, this Court amended Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to more clearly articulate and adopt appropriate standards for consideration of post-termination visitation outside of a fact-based context. On remand, the circuit court is instructed to make rulings consistent with that Rule.

12